[No. 30690-1-I.    Division One.    January 10, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. KERY LEE ANDERSON, *Appellant.*

454

*Elaine Winters* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Terri Luken, Deputy,* for respondent.

SCHOLFIELD, J. — Kery Lee Anderson appeals his convictions on one count of first degree assault and one count of first degree escape. We affirm the convictions but remand for resentencing.

By information dated December 19, 1991, appellant Kery Lee Anderson was charged with one count of first degree assault in violation of RCW 9A.36.011(1)(a) (count 1), one count of first degree escape in violation of RCW 9A.76.110 (count 2), and one count of second degree assault in violation of RCW 9A.36.021(1)(a) (count 3). The charges stemmed from an incident in which Anderson attempted to escape from custody while being transported to Harborview Medical Center for medical treatment.

The case was tried to a jury on March 9 to 12, 1992. Count 3 was dismissed prior to jury selection. Anderson's motion to sever the two remaining counts was denied by the court. The evidence presented at trial was as follows:

On December 17, 1991, Anderson was being held in the King County Jail awaiting sentencing on convictions for first degree possession of stolen property and a violation of the Uniform Firearms Act. He was also subject to an institu-

tional hold for a 1981 robbery conviction. On December 17 between 6:30 and 7 a.m., Timothy Bergman, a corrections officer at the King County Jail, transported Anderson from the jail to Harborview Medical Center for a medical appointment. Prior to departing for the hospital, Bergman restrained Anderson with handcuffs and a belly chain, as well as leg shackles.

During the drive to Harborview, which lasted about 5 minutes, Bergman had no conversation with Anderson. On arrival at Harborview, Bergman got out of the car and began to let Anderson out of the back seat. Bergman saw nothing unusual in the back seat and did not inspect Anderson's restraints. Anderson got out of the car, and Bergman leaned over to close and lock the door. At that point, Anderson, who had apparently been able to free himself of his restraints during the ride, "slammed" Bergman and forced him into the car's doorjamb. Bergman then felt a pressure or pulling under his arm and realized Anderson was pulling on his gun, which was holstered and loaded. Anderson gave a couple of good jerks on Bergman's weapon before Bergman was able to jam his elbow back, strip Anderson's hand off the weapon, and get his own hand on the weapon.

As Bergman turned to face Anderson, Anderson renewed his effort to take the gun. Anderson, using both hands, was pulling on the gun and pulling Bergman's whole body forward. After wrestling for a few moments, Anderson pushed Bergman into the seat of the car and ended up on top of him. Anderson continued to grip Bergman's weapon and pull at him, and tried to strip Bergman's hand off the weapon. Realizing that Anderson had managed to free his hands from the restraints, Bergman began to shout for help, and also tried to roll over on his gun in order to "maintain" his weapon. Anderson used both hands in an effort to pull Bergman's weapon away, using such force that Bergman was ripped up off the seat. Bergman stated that a surge of fear went through him and that he feared for his life.

As the struggle continued, Bergman noticed that Anderson had a pair of handcuffs. While tugging on the gun with

one hand, Anderson began hitting Bergman with the handcuffs, trying to clip them on him. After six to eight strikes, Anderson clipped Bergman's left wrist with the handcuffs. Anderson then bit Bergman's ear, and Bergman responded by biting Anderson's bicep. Bergman testified that he acted in desperation, in a last ditch effort to survive.

When Bergman bit him, Anderson let go of the gun. Bergman then pulled his gun out of his holster. Anderson immediately grabbed the barrel of the gun with both hands and shoved it up against Bergman's head. Bergman, who had his finger over the trigger guard, grabbed the gun and pushed it away and continued struggling with Anderson. After shoving the gun back up toward Anderson, Bergman fired a round, which shot up through the car windshield and grazed one of Anderson's fingers. Anderson continued to hold onto the gun until Bergman kicked him out of the car. Bergman then tried to fire his gun at Anderson, but the gun would not fire. Anderson ran across the street.

Bergman tried to fire at Anderson again as he fled, but his gun was jammed due to a "stovepipe malfunction". Anderson was able to elude Bergman, but was recaptured approximately 5 hours after his escape.

The jury found Anderson guilty of first degree assault as charged in count 1 and first degree escape as charged in count 2. Anderson received standard range sentences for each count, with the sentences to be served consecutively. This appeal followed.

## SUFFICIENCY OF EVIDENCE

Anderson claims no reasonable juror could have found beyond a reasonable doubt that he intended to inflict great bodily harm on Bergman, as required for a conviction for first degree assault. The State responds that sufficient evidence was presented that Anderson intended to inflict great bodily harm.

In reviewing the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt. *State v. Joy*, 121 Wn.2d 333, 338, 851 P.2d 654 (1993). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *Joy*, at 338-39.

The crime of assault in the first degree is defined as follows:

> (1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:
> (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death;

RCW 9A.36.011. The term "great bodily harm" is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ". RCW 9A.04.110(4)(c).

■ To establish first degree assault, intent to inflict great bodily harm must be shown. *State v. Ferreira*, 69 Wn. App. 465, 850 P.2d 541 (1993). " 'Evidence of intent . . . is to be gathered from all of the circumstances of the case, including not only the manner and act of inflicting the wound, but also the nature of the prior relationship and any previous threats.' " *Ferreira*, at 468 (quoting *State v. Woo Won Choi*, 55 Wn. App. 895, 906, 781 P.2d 505 (1989), *review denied*, 114 Wn.2d 1002 (1990)).

In arguing that the evidence is insufficient to sustain his conviction, Anderson cites a series of cases decided under former versions of the first degree assault statute. *See State v. Woo Won Choi, supra* (construing former RCW 9A.36.010); *State v. Odom*, 83 Wn.2d 541, 520 P.2d 152, *cert. denied*, 419 U.S. 1013 (1974); *State v. Stationak*, 73 Wn.2d 647, 440 P.2d 457 (1968) (construing former RCW 9.11.010); *State v. Shelton*, 71 Wn.2d 838, 431 P.2d 201 (1967); *State v. Mitchell*, 65 Wn.2d 373, 397 P.2d 417 (1964).

Predecessors to the current first degree assault statute required proof of intent to kill, *see* former RCW 9A.36.010 and RCW 9.11.010, but the present version of the statute, effec-

tive July 1, 1988, requires only an intent to inflict great bodily harm. *See* RCW 9A.36.011(1). Given the different intent requirements between the former and current statutes, we do not find the decisions cited by Anderson persuasive on the issue of sufficiency of the evidence here.

This case involved a violent altercation initiated by Anderson, a jail inmate, against Bergman, a guard transporting him. The attack and attempted escape were obviously planned in advance by Anderson. Anderson secretly freed himself from his restraints while being transported in the police car and "slammed" Bergman into the doorjamb of the car when the opportunity arose. Anderson immediately began a vigorous and prolonged attempt to take Bergman's weapon by force, during which he bit Bergman and tried to restrain him with his own handcuffs. When Bergman drew his gun in the course of the struggle, Anderson used both hands to push the weapon toward Bergman's head. The struggle ended only after Bergman fired his weapon and kicked Anderson out of the car.

Considering all the circumstances of this case, we believe a jury could conclude beyond a reasonable doubt that Anderson intended to inflict great bodily harm on Bergman. Had the jury found the evidence lacking on the intent issue, it could have convicted Anderson of the lesser included offense of second degree assault. There was sufficient evidence of Anderson's guilt of first degree assault.

### ADMISSION OF THREE PRIOR FELONIES

Anderson claims the trial court's admission of his three prior felony convictions to prove that he was being detained pursuant to a felony conviction at the time of his escape was prejudicial error. The State responds that the court acted within its discretion in allowing the prior felony convictions because an element of first degree escape is that the defendant was detained pursuant to a felony conviction.

Among Anderson's prior felony offenses were a 1981 first degree robbery conviction, a violation of the Uniform Firearms Act (VUFA) (RCW 9.41.040(1), and possession of stolen property. The latter two offenses occurred in 1991. According

to the State, Anderson was held beginning September 3, 1991, on possession of stolen property and VUFA charges, and by September 5, 1991, Anderson was also being held pursuant to a parole hold for his 1981 robbery conviction. Anderson was found guilty on the VUFA and possession of stolen property charges on October 16, 1991, and he was sentenced November 22, 1991. The judgment and sentence was not entered, however, until January 14, 1992, after Anderson committed the current offenses.

RCW 9A.76.110 provides, in part:

> (1) A person is guilty of escape in the first degree if, being detained pursuant to a conviction of a felony or an equivalent juvenile offense, he escapes from custody or a detention facility.

As the statute indicates, to convict Anderson of first degree escape, the State had the burden of proving that he escaped while being detained pursuant to a conviction for a felony. The issue here is whether it was improper for the court to allow evidence of three prior felony convictions where proof of only one was sufficient for a conviction on the escape count.

■ We have considered the State's arguments on this issue and are persuaded it was not necessary to establish that Anderson was being held pursuant to three felony convictions when only one was required to prove an escape under RCW 9A.76.110.

Despite the error, we conclude the admission of the three prior felonies on the escape charge was clearly harmless. The evidence of guilt on the escape charge was overwhelming, and there is no indication the jury's consideration of all three felonies prejudiced Anderson in any way. As we discuss further below, the prior felonies were relevant and admissible as to the first degree assault charge, notwithstanding a jury instruction to the contrary.

## SEVERANCE OF COUNTS

Anderson claims the trial court should have granted his motion to sever in order to mitigate the prejudicial effect of

the prior convictions on the assault charge. The State responds that the trial court acted within its discretion in denying Anderson's motion to sever.

In *State v. Bythrow*, 114 Wn.2d 713, 717-18, 790 P.2d 154 (1990), the court summarized the principles governing the severance of similar counts:

> CrR 4.3(a) permits two or more offenses of similar character to be joined in one trial. Offenses properly joined under CrR 4.3(a), however, may be severed if "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). The failure of the trial court to sever counts is reversible only upon a showing that the court's decision was a manifest abuse of discretion. Defendants seeking severance have the burden of demonstrating that a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy.

(Footnotes and citations omitted.) The court in *Bythrow* considered the jury's ability to compartmentalize the evidence, the strength of the State's evidence on each count, the issue of cross admissibility of the various counts, whether the judge instructed the jury to decide each count separately, and the concern for judicial economy. *See State v. Kalakosky*, 121 Wn.2d 525, 537, 852 P.2d 1064 (1993).

In this case, the jury could reasonably be expected to separate the evidence regarding the assault from the evidence of the escape. The evidence on the assault charge was reasonably strong, and the evidence on the escape charge was very strong. The jury was instructed to consider each count separately.

The issue of cross admissibility of evidence on the two counts is complicated by the jury instructions given. It is apparent from the parties' pretrial argument that the State offered Anderson's three prior felonies to establish he was being detained pursuant to a felony conviction, an element of the escape charge. However, the trial court's oral statements indicate it believed the evidence was also probative of Anderson's intent on the assault charge:

> What was his state of mind? What was his intent? The serious nature of the offense, it seems to me, is one of the

factors that a jury has a right to know. If he's simply sitting in the King County Jail upon some charge or conviction of possession of stolen property, for example, then the jury might well say, well, nobody in that situation would ever endeavor to kill somebody in an effort to get away.

It might be different, should the jury be of the opinion that he's looking at serving more time for robbery and the serious nature of that offense. And I think the very seriousness of it goes to the state of mind of the defendant. I'm going to admit it. They may show all of the matters that he was being held for at the time of the purported attempt to escape.

■ To convict Anderson of first degree escape, the State had to show that Anderson escaped from custody while being held pursuant to a single felony conviction, *see* RCW 9A.76-.110, and that he knew his actions would result in leaving confinement without permission. *See State v. Descoteaux*, 94 Wn.2d 31, 34-35, 614 P.2d 179 (1980). The State did not have to show Anderson left custody with an intent to avoid confinement. *Descoteaux*, at 35. Thus, intent is not an element of first degree escape, and the additional offenses to show Anderson's state of mind or intent in attempting to escape were not necessary. *See* RCW 9A.76.110.

■ However, we believe the prior felonies were relevant and admissible on the issue of Anderson's motive and intent in committing the assault. Under ER 404(b), evidence of other crimes or wrongs is not admissible "to prove the character of a person in order to show action in conformity therewith", but such evidence may be admissible as proof of motive or intent. In our view, the trier of fact may permissibly infer that a defendant incarcerated on several serious felonies would have a greater motive and intent to cause serious bodily injury to a police officer while attempting to escape than a defendant incarcerated on a single felony.

We recognize the jury was instructed to consider the prior felonies only on the escape charge, and was specifically told not to consider the offenses as evidence of Anderson's guilt on the assault charge. To the extent the jury followed the instructions, Anderson was not prejudiced. However, even assuming the jury did consider the prior felonies on the assault charge, we find no prejudice because the offenses

were admissible on that count under ER 404(b). "Defendants seeking severance must not only establish that prejudicial effects of joinder have been produced, but they must also demonstrate that a joint trial would be so prejudicial as to outweigh concern for judicial economy." *Bythrow*, 114 Wn.2d at 722. Anderson has not established any prejudice from the joinder of offenses in this case. We hold the trial court was within its broad discretion in denying severance.

## EXCEPTIONAL SENTENCE

### 1. Same Criminal Conduct.

Anderson claims his offenses encompassed the same criminal conduct and should have been counted as one crime for purposes of calculating his offender score. The State contends that counts 1 and 2 required different objective criminal intent and therefore are not the same criminal conduct.

At the time of sentencing, Anderson had six prior adult felony convictions, one of which was a conviction for first degree robbery. In calculating Anderson's offender score for the current assault conviction, his prior robbery conviction was counted as 2 points, *see* RCW 9.94A.360(10), and his other five convictions were counted as 1 point each, for a score of 7. Although Anderson claimed his current assault and escape convictions should be counted as one crime because they were the "same criminal conduct" for sentencing purposes, the court apparently rejected this claim. Anderson's escape conviction was added to his score for the assault conviction, bringing his total offender score for the assault to 8. The court followed the same analysis with the escape offense, adding a point for the current assault conviction to Anderson's score of 6 on the escape offense (*see* RCW 9.94A-.360(15)), for a total score of 7 on the escape conviction. Anderson was then sentenced at the top end of the standard range for each offense, which was 277 months for the assault conviction and 57 months for the escape conviction. RCW 9.94A.310.

The issue here is whether the assault and escape crimes were the "same criminal conduct" under RCW 9.94A.400(1)(a)

and thus should have been treated as one offense for sentencing. For two crimes to constitute the same criminal conduct under RCW 9.94A.400(1)(a), " 'both crimes must involve: (1) the same objective criminal intent, which can be measured by determining whether one crime furthered another; (2) the same time and place; and (3) the same victim.' " *State v. Walden*, 69 Wn. App. 183, 187-88, 847 P.2d 956 (1993) (quoting *State v. Vike*, 66 Wn. App. 631, 633, 834 P.2d 48 (1992)). According to *Walden*, the focus under the first prong is on the extent to which the defendant's criminal intent, viewed objectively, changed from one crime to another. *Walden*, at 188.

Anderson claims it is undisputed that the crimes here occurred in the same time and place and that only one victim was involved. He and the State focus their arguments on the first element, which is whether both offenses involved the same objective criminal intent.

The evidence in this case clearly shows that Anderson committed the assault on Bergman in order to further his escape from Bergman's custody. Without incapacitating Bergman or at least neutralizing Bergman's firearm, Anderson would have been unable to complete his escape. Objectively viewed, Anderson's criminal intent was the same from one offense to the other: a desire to escape Bergman's custody. Therefore, we conclude the two offenses encompassed the same criminal conduct. The trial court abused its discretion in counting the offenses separately for sentencing purposes.

2. Consecutive Sentences.

Although the trial court imposed standard range sentences for both the assault and escape convictions, it ordered that the sentences be served consecutively. RCW 9.94A.400(1)(a) states that a person shall receive concurrent sentences when sentenced for two or more current offenses, and RCW 9.94A-.120(15) provides that "[a] departure from the standards in RCW 9.94A.400(1) and (2) governing whether sentences are to be served consecutively or concurrently is an exceptional sentence . . .". Thus, the court's imposition of consecutive sentences in this case is an exceptional sentence which may be appealed by Anderson. *See* RCW 9.94A.120(15).

To reverse a sentence outside the standard range, the reviewing court must find: (a) the reasons supplied by the sentencing judge are not supported by the record which was before the judge *or* those reasons do not justify a sentence outside the standard range for that offense; or (b) the sentence is clearly excessive or too lenient. RCW 9.94A.210(4); *State v. Pryor*, 115 Wn.2d 445, 450, 799 P.2d 244 (1990). Under the second part of subsection (a), the reviewing court must independently determine as a matter of law whether the trial court's reasons justify the sentence. *Pryor*, at 450.

In this case, the sentencing judge found the following to be "substantial and compelling reasons" justifying a sentence above the standard range:

> 1) The victim in this case was acting in his official duties as a corrections officer at the time of the assault and the legislature has historically imposed higher penalties for assaults on officers.
> 2) The defendant exhibited a pattern of assaultive behavior against officers (2 counts of assault 3° in 1987)[.]

Anderson claims neither of these findings justifies an exceptional sentence.

The State concedes that the court's second reason for imposing an exceptional sentence is erroneous because Anderson's prior offenses have already been considered in computing the presumptive sentence range, citing *State v. McAlpin*, 108 Wn.2d 458, 463, 740 P.2d 824 (1987). However, the State argues the exceptional sentence should nonetheless be upheld because the first reason is sufficient by itself to sustain it.

The list of aggravating factors provided in RCW 9.94A-.390(2) does not contain any consideration for the victim's status as a police officer. However, the factors listed in RCW 9.94A.390 are illustrative only and are not exclusive. *See State v. Vermillion*, 66 Wn. App. 332, 345, 832 P.2d 95 (1992), *review denied*, 120 Wn.2d 1030 (1993).

In *State v. Kidd*, 57 Wn. App. 95, 786 P.2d 847, *review denied*, 115 Wn.2d 1010 (1990), this court strongly suggested that an exceptional sentence may be justified where a defend-

ant assaults a victim he knows to be a police officer. In *Kidd*, the defendant was charged with, among other offenses, one count of second degree assault for firing at two undercover police officers. *Kidd*, at 97. The defendant testified at trial that he thought the undercover officers were drug dealers against whom he had to protect himself. *Kidd*, at 98. The court imposed an exceptional sentence, and among the reasons given was that the assault was on police officers. *Kidd*, at 102. This court ruled the factor was inappropriate because the defendant did not know his victims were police officers.

> The Legislature statutorily provides enhanced penalties for acts against police officers in those situations it deems appropriate. Significantly, these statutes include an element of knowledge that the victim was an officer acting in the course of official duty. *E.g.*, RCW 10.95.020(1) (aggravated first degree murder when defendant knew or should have known that the victim was a law enforcement officer performing official duties); RCW 9A-.76.030 (misdemeanor to refuse to summon aid upon request of person known to be a peace officer). Here, Kidd did not know that his pursuers, who were in an unmarked car and were not in uniform, were police officers. Absent this knowledge, we refuse to accept the victims' police officer status as a basis for imposing an exceptional sentence.

*Kidd*, at 104.

Unlike the defendant in *Kidd*, Anderson knew his victim was a corrections officer. The reasoning of *Kidd* supports the conclusion that a defendant's assault on a victim he knows is a police officer justifies an exceptional sentence.

Nevertheless, a remand for resentencing is required because the trial court erred in failing to find that the escape and assault charges encompassed the same criminal conduct. Anderson's convictions are otherwise affirmed.

Affirmed and remanded for resentencing.

PEKELIS, A.C.J., and COLEMAN, J., concur.

Reconsideration denied February 9, 1994.

Review denied at 124 Wn.2d 1013 (1994).