964 P.2d 1196 (1998)
STATE of Washington, Respondent,
v.
Mark Lee MILLER, Appellant.
No. 21549-7-II.
Court of Appeals of Washington, Division 2.
October 2, 1998.
As Amended November 6 and December 11, 1998.
*1198 Robert W. Shannon, Clark County Deputy Pros. Atty., Vancouver, for Respondent.
R.A. Lewis, Knapp O'Dell & Lewis, (Court Appointed), Camas, for Appellant.
*1197 ARMSTRONG, Judge.
Mark Lee Miller appeals his convictions for attempted theft of a firearm and third degree assault. He contends that the adoption of an increased seriousness level for theft of a firearm, through the passage of Initiative 159, violates Article II, Section 19 of the Washington State Constitution. In addition, he contends that the trial court erred (1) in not dismissing all charges against him following the court's finding of prosecutorial vindictiveness; (2) in finding that his statements following arrest were voluntarily made; and (3) in concluding that the evidence was sufficient to support his conviction for attempted theft of a firearm. He also argues that attempted theft of a firearm and third degree assault were the same criminal conduct for purposes of calculating his offender score. We hold that Initiative 159 is constitutional and that the attempted theft and the assault were part of the same criminal conduct and, therefore, remand for resentencing. Otherwise, we affirm.

FACTS
Mark Lee Miller was charged with unlawful possession of a firearm, attempted theft of a firearm, and third degree assault. The charges arose out of an altercation with Vancouver Police Officer Charles Ford. Officer Ford pulled Miller over after he saw Miller's car nearly collide with another vehicle. While standing at the passenger side of the car, Ford saw a revolver on the front seat partially covered with a sheet. Ford then ordered Miller away from the car and told him to turn around and put his hands behind his back. Ford tried to handcuff Miller but Miller resisted and pulled his hands apart. Miller repeatedly asked the officer, "[W]hy are you doing this?"
Ford then jumped on Miller to control him while trying to put on the handcuffs. Miller rolled out from underneath Ford and put his hands on Ford's holstered gun. Miller yanked on the gun, while Ford struggled to keep it in the holster. During the struggle the two men moved about 25 feet across the parking lot. Several witnesses testified that Miller eventually had Officer Ford down on his knees with one arm wrapped around Ford's neck and the other hand on the gun. One witness said, "Officer Ford wasn't doing hardly anything. I think his face was purple and he was losing." The same witness broke up the fight with a football block and Miller was able to escape.
Miller was later arrested by Vancouver Police Officer Scott Creager. After Officer Creager read Miller his Miranda rights,[1] Miller made several statements in which he admitted struggling with Officer Ford and trying to prevent him from drawing his gun. At a CrR 3.5 hearing, Miller claimed that Creager had coerced his statements by threatening to charge his aunt and girlfriend with harboring a fugitive and aiding and abetting a known felon. He testified that Creager said, "But it would be possible for me to see that there are no charges brought against Julie or Rita if you were to sign this waiver." Creager testified that he discussed the fact that Miller's aunt and girlfriend could be charged as accessories but denied promising Miller that charges would not be filed if he made a statement. The trial court ruled that the statements were made voluntarily, but did not enter findings of facts or conclusions of law as required under CrR 3.5.
During plea negotiations, Miller offered to plead guilty to assault and attempted theft of a firearm but refused to plead guilty to possession of a firearm. Following these negotiations, the State moved to amend Count I to assault in the second degree with intent to commit theft of a firearm. Miller *1199 objected, claiming that the prosecutor acted vindictively during the plea negotiations because he threatened to amend the charges to second degree assault unless Miller pled guilty to all three charges. Because the amended charge is a "most serious crime" under the Persistent Offender Accountability Act,[2] Miller, if convicted, would have been sentenced to life imprisonment without the possibility of parole. Miller argued that the prosecutor's threat was improper because the State did not take the firearm into evidence and, therefore, could not prove the possession charge.
The trial court denied the State's request to file a second amended information, ruling that
it [appears] that the plea bargaining choices offered to the defendant were based, at least in part, upon charges which were not reasonably based upon the evidence, and further finding that filing of the Second Amended Information in response to the refusal to plead to the unsupported charge constitutes prosecutorial vindictiveness.[[3]]
Although Miller asked that all charges be dismissed, the court dismissed with prejudice only the charge of unlawful possession of a firearm.
Miller was convicted of attempted theft of a firearm and third degree assault. Based on an offender score of 3 for each count, Miller was sentenced within the standard range: 25.5 months for the attempted theft of a firearm and 9 months for the assault. The trial court rejected Miller's contention that his offender score should be a 2 for each count because theft of a firearm and third degree assault constitute the same criminal conduct under RCW 9.94A.400(1)(a). The trial court also rejected Miller's argument that Initiative 159 (increasing penalties for armed crimes) violates Article II, Section 19 of the Washington State Constitution.

ANALYSIS

A. Initiative 159 and Article II, Section 19 of the Washington State Constitution
Miller initially contends that Initiative 159, which increased the seriousness level for theft of a firearm, violates the single-subject rule of Article II, Section 19 of the Washington State Constitution. He argues that the increased penalty should be declared void because it is not fairly included within the initiative's legislative title. We disagree.
The legislative title of Initiative 159 is "An Act Relating to increasing penalties for armed crimes...." LAWS of 1995, ch. 129; State v. Broadaway, 133 Wash.2d 118, 124, 942 P.2d 363 (1997). Under the Act, theft of a firearm was changed from a class C to a class B felony and the seriousness level for purposes of sentencing was increased from a level V to a VI. LAWS of 1995, ch. 129 §§ 3, 10; STATE OF WASHINGTON SENTENCING GUIDELINES COMM'N, ADULT SENTENCING GUIDELINES MANUAL § II, at 77 (1996).[4]
Article II, Section 19 provides: "No bill shall embrace more than one subject, and that shall be expressed in the title." Const. art. II, & sect; 19. The purpose of this section is notify the Legislature and the general public about the contents of proposed legislation and to prevent "`logrolling,' or pushing legislation through by attaching it to other necessary or desirable legislation." Broadaway, 133 Wash.2d at 124, 942 P.2d 363 (quoting State v. Thorne, 129 Wash.2d 736, 757, 921 P.2d 514 (1996)). In general, a legislative title is constitutionally sufficient if it "gives such notice as should reasonably lead to an inquiry into the body of the act itself, or indicates, to an inquiring mind, the scope and purpose of the law." State ex rel. Washington Toll Bridge Auth. v. Yelle, 32 Wash.2d 13, 26, 200 P.2d 467 (1948) (citations omitted).
*1200 But a legislative title can be either general or restrictive, and this distinction determines the legal analysis that is applied. See Thorne, 129 Wash.2d at 758, 921 P.2d 514; Yelle, 32 Wash.2d at 26, 200 P.2d 467. The Supreme Court has recently held that the title to Initiative 159 is restrictive. Broadaway, 133 Wash.2d at 127, 942 P.2d 363. Accordingly, the title "will not be regarded as liberally and provisions not fairly within it will not be given force." Broadaway, 133 Wash.2d at 127, 942 P.2d 363; Thorne, 129 Wash.2d at 758, 921 P.2d 514; Yelle, 32 Wash.2d at 26, 200 P.2d 467. "A restrictive title expressly limits the scope of the act to that expressed in the title." Broadaway, 133 Wash.2d at 127, 942 P.2d 363.
In Broadaway, the Supreme Court said that "Initiative 159 carves out an area of criminal offenses, armed crime, and limits its scope to increasing penalties for armed crime." Broadaway, 133 Wash.2d at 127-28, 942 P.2d 363. Thus, the Supreme Court affirmed Broadaway's sentence enhancement for first degree robbery while armed with a firearm "because penalty enhancements for crimes involving use of firearms fall squarely within the restrictive legislative title." Broadaway, 133 Wash.2d at 129, 942 P.2d 363 (emphasis added).
Although it might be argued that "armed crime" refers only to crimes in which the defendant is armed at the inception and throughout the crime, Article II, Section 19 does not require such a fine distinction. The standard is whether the legislative title conveys to a reasonably intelligent person that an increased penalty for the crime theft of a firearm is included within the scope of the Act. See Yelle, 32 Wash.2d at 27-28, 200 P.2d 467. We hold that it does.
The common definition of "armed" is "furnished with weapons of offense or defense: FORTIFIED, EQUIPPED." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 119 (1969). In the context of deadly weapons enhancements Washington courts have defined the term even more broadly: "A person is `armed' if a weapon is easily accessible and readily available for use, either for offensive or defensive purposes." State v. Valdobinos, 122 Wash.2d 270, 282, 858 P.2d 199 (1993); State v. Mills, 80 Wash.App. 231, 235, 907 P.2d 316 (1995); State v. Sabala, 44 Wash.App. 444, 448, 723 P.2d 5 (1986).
The perpetrator of the crime of theft of a firearm becomes armed or equipped with a weapon of offense or defense the moment he "wrongfully obtains" or "exerts unauthorized control" of the firearm.[5] But because the crime also requires "intent to deprive," the crime is not necessarily completed at the point in time that the perpetrator takes possession of the firearm. Cf. State v. Roose, 90 Wash.App. 513, 519, 957 P.2d 232 (1998) (holding that theft of a firearm completed when defendant exited a sporting goods store with handguns in a duffel bag). Thus, a person stealing a firearm is armed during the commission of the crime and poses the same danger to a society as a person who is armed at a crime's inception. Because theft of a firearm is by definition the act of arming oneself, we hold that the increased penalty for this crime is fairly included with the restrictive title of "An Act Relating to increasing penalties for armed crimes...." LAWS of 1995, ch. 129. Accordingly the increase in the seriousness level for theft of a firearm in Initiative 159 is valid.

B. Remedy for Prosecutorial Vindictiveness
Miller contends that the trial court should have dismissed all charges following its finding that the State acted with prosecutorial vindictiveness. He argues that the State's attempt to coerce a plea to a charge for which there is insufficient evidence is "shocking and unpardonable conduct" that warrants dismissal of all charges against him under CrR 8.3(b).[6] We disagree.
*1201 Before charges can be dismissed under CrR 8.3(b), the defendant must show (1) arbitrary action or governmental misconduct and (2) prejudice affecting the defendant's right to a fair trial. State v. Michielli, 132 Wash.2d 229, 239-40, 937 P.2d 587 (1997); State v. Koerber, 85 Wash.App. 1, 4, 931 P.2d 904 (1997). The trial court's ruling on such a motion to dismiss is discretionary and reviewable only for manifest abuse of discretion, i.e. the trial court's decision is manifestly unreasonable, is exercised on untenable grounds, or for untenable reasons. Michielli, 132 Wash.2d at 240, 937 P.2d 587; State v. Blackwell, 120 Wash.2d 822, 830, 845 P.2d 1017 (1993); State v. Barnes, 85 Wash.App. 638, 655, 932 P.2d 669, review denied, 133 Wash.2d 1021 (1997). Dismissal is an extraordinary remedy, not warranted unless the defendant shows prejudice. State v. Marks, 114 Wash.2d 724, 730, 790 P.2d 138 (1990); Koerber, 85 Wash.App. at 5, 931 P.2d 904. For example, in Marks, the Supreme Court did "not condone the egregious behavior of the Spokane Police and Sheriff's offices" but nevertheless held that dismissal was "an improper remedy where the evidence from the illegal search has been suppressed, and the violation has no impact on the criminal proceedings." Marks, 114 Wash.2d at 732, 790 P.2d 138.
Here, Miller was not prejudiced by the trial court's refusal to dismiss the remaining charges. First, he did not accept the plea bargain. Second, the State was not allowed to amend the information to include second degree assault, and the unlawful possession of a firearm charge was dismissed. Third, the charges of attempted theft of a firearm and third degree assault are supported by the evidence. Therefore, we find no abuse of discretion in the trial court's refusal to dismiss all of the charges.

C. Voluntariness of Miller's Confession
Miller next argues that the trial court erred (1) in not entering written findings of fact and conclusions of law following the CrR 3.5 suppression hearing and (2) in determining that Miller's statements to Officer Creager were given voluntarily.
Under CrR 3.5(c), the trial court is required to enter written findings of facts and conclusions of law.[7] A trial court's failure to comply with this requirement constitutes error, but the error is harmless if the court's oral findings are sufficient to allow appellate review. State v. Thompson, 73 Wash.App. 122, 130, 867 P.2d 691 (1994); State v. Riley, 69 Wash.App. 349, 352-53, 848 P.2d 1288 (1993); State v. Smith, 67 Wash.App. 81, 87, 834 P.2d 26 (1992). If substantial evidence in the record supports the trial court's findings of fact, the findings will be considered verities on appeal.[8]Broadaway, 133 Wash.2d at 131, 942 P.2d 363.
In Broadaway, the State Supreme Court set out the test to determine whether a confession is voluntary:
[T]he inquiry is whether, under the totality of the circumstances, the confession was coerced....
In assessing the totality of the circumstances, a court must consider any promises or misrepresentations made by the interrogating officers. The court must determine whether there is a causal relationship between the promise and the confession. The inquiry is whether the Defendant's will was overborne.
*1202 Broadaway, 133 Wash.2d at 132, 942 P.2d 363 (citations omitted). Circumstances to be considered by the trial court include "the condition of the defendant, the defendant's mental abilities, and the conduct of the police." Broadaway, 133 Wash.2d at 132, 942 P.2d 363 (citing State v. Rupe, 101 Wash.2d 664, 678-79, 683 P.2d 571 (1984)).
Here, the trial court's findings are sufficient to permit appellate review. The court found that (1) Miller was read his Miranda rights from a standardized form; (2) Miller understood each right; (3) his answers were responsive to the questions; and (4) Miller was not intoxicated or under the influence of a controlled substance. With regard to Miller's claim that he spoke with Officer Creager only because Creager promised that his aunt and girlfriend would not be charged as accessories, the court found Officer Creager more credible. And the trial court assesses the credibility of witnesses. State v. Hill, 123 Wash.2d 641, 646, 870 P.2d 313 (1994). Officer Creager testified that he discussed the fact that Miller's aunt and girlfriend could be charged as accessories but that he did not promise they would not be charged if Miller gave a statement. Although Miller's and Officer Creager's testimonies are in direct conflict, Creager's testimony is substantial evidence supporting the trial court's determination that the confession was voluntary. See Broadaway, 133 Wash.2d at 134, 942 P.2d 363. Accordingly, we find no error in the trial court's ruling admitting Miller's statement.

D. Sufficiency of the Evidence of Attempted Theft of a Firearm
Miller next contends that the evidence is insufficient to establish intent to deprive Officer Ford of his weapon. His argument is without merit.
Evidence is sufficient to support a criminal conviction if, when viewed in the light most favorable to the State, "`any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Myles, 127 Wash.2d 807, 816, 903 P.2d 979 (1995) (quoting State v. Joy, 121 Wash.2d 333, 338, 851 P.2d 654 (1993)). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992) (citation omitted).
Theft means "[t]o wrongfully obtain or exert unauthorized control over the property or services of another ... with intent to deprive him of such property."[9] RCW 9A.56.020(1)(a). Under the statute, the word "deprive" is given its common meaning, except in cases involving intellectual property. State v. Komok, 113 Wash.2d 810, 814-15, 783 P.2d 1061 (1989); see RCW 9A.56.010(5). In Komok, the Supreme Court noted that the common meaning of "deprive" is "`[t]o take something away from,'" or "`[t]o keep from having or enjoying.'" Komok, 113 Wash.2d at 815 n. 4, 783 P.2d 1061 (quoting WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 365 (1984)).
Officer Ford testified that Miller reached for his holstered gun. Ford stated that he was trying to hold on to the weapon while Miller, using both hands, was "pulling on it with everything he's got." Two witnesses confirmed Officer Ford's testimony. One witness said that Miller "tried to take [the officer's] gun." The other witness, who was responsible for breaking up the altercation, said, "I just thought to myself, good lord, he's going to get the gun." Although Miller told Officer Creager in his confession that he was trying to hold the weapon down to prevent Officer Ford from shooting him, the evidence, viewed in the light most favorable to the State, is sufficient to establish intent to deprive beyond a reasonable doubt.

E. Same Criminal Conduct for Sentencing Purposes
Miller next contends that the trial court erred in calculating his offender score because his current offenses, theft of a firearm *1203 and third degree assault, encompass the same criminal conduct. He argues that his struggle with Officer Ford was one continuous event involving both the assault and the attempted theft and that there was no change in purpose throughout the struggle. We agree.
RCW 9.94A.400(1)(a) provides in part:
[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime.
Two or more current offenses meet the "same criminal conduct" test if the crimes (1) require the same criminal intent; (2) are committed at the same time and place; and (3) involve the same victim. RCW 9.94A.400(1)(a); State v. Garza-Villarreal, 123 Wash.2d 42, 46, 864 P.2d 1378 (1993); State v. Lewis, 115 Wash.2d 294, 302, 797 P.2d 1141 (1990). Because it is undisputed that the two offenses occurred at the same time and place and involved the same victim, the second and third elements are met. Thus, we need only consider whether each crime required the same criminal intent.
Relying on State v. Rodriguez, the State argues that the intent for attempted theft of a firearm[10] and third degree assault[11] are distinct and therefore do not constitute the same criminal conduct. State v. Rodriguez, 61 Wash.App. 812, 816, 812 P.2d 868 (1991). But this ignores the objective criminal intent test established in State v. Dunaway, 109 Wash.2d 207, 214-15, 743 P.2d 1237 (1987). The Dunaway test requires the court to focus on "the extent to which a defendant's criminal intent, as objectively viewed, changed from one crime to the next." State v. Lessley, 118 Wash.2d 773, 777, 827 P.2d 996 (1992) (discussing Dunaway test); Dunaway, 109 Wash.2d at 215, 743 P.2d 1237. Lessley, 118 Wash.2d at 777, 827 P.2d 996; State v. Collicott, 118 Wash.2d 649, 668-69, 827 P.2d 263 (1992).
In Dunaway, the Court found that the defendant's convictions for kidnapping and robbery were "intimately related" because he abducted his victim with the intent to commit robbery. Dunaway, 109 Wash.2d at 217, 743 P.2d 1237. Similarly, in State v. Anderson, Division One held that the defendant's convictions for first degree assault and escape encompassed the same criminal conduct. State v. Anderson, 72 Wash.App. 453, 464, 864 P.2d 1001 (1994). In Anderson, the defendant attempted to escape from custody while he was being transported from jail to a medical appointment. Anderson, 72 Wash.App. at 456, 864 P.2d 1001. He managed to slip out of his restraints and slammed the corrections officer into the car while reaching for his gun. A struggle ensued in which both men fought to gain control of the weapon. During the struggle, Anderson hit the officer several times with handcuffs and bit the officer's ear. Anderson, 72 Wash.App. at 456-57, 864 P.2d 1001. Division One held that Anderson assaulted the officer to further his escape and, therefore, the criminal intent was the same from one offense to the other. Anderson, 72 Wash.App. at 464, 864 P.2d 1001.
Here, the evidence shows that Miller intended throughout to deprive the officer of his weapon. Officer Ford and three other witnesses testified that Miller had at least one hand on the gun during the entire struggle. One witness even stated, "He pretty much the whole time was trying to get the gun." Thus, the assault on Officer Ford, *1204 when viewed objectively, was "intimately related" to the attempted theft. Miller could not deprive Officer Ford of his holstered weapon without assaulting him. Because the two offenses encompass the same criminal conduct, the trial court erred in calculating an offender score of 3 for each offense.
In conclusion, we hold (1) that the increase in the seriousness level for theft of a firearm in Initiative 159 is valid because the crime is fairly included within the legislative title; (2) that Miller was not prejudiced by the trial court's refusal to dismiss all charges following a finding of prosecutorial vindictiveness; (3) that substantial evidence supports the trial court's determination that Miller's confession was voluntary; (4) that the evidence was sufficient to establish intent to deprive the officer of his weapon; and (5) that the trial court erred in calculating Miller's offender score because theft of a firearm and third degree assault constituted the same criminal conduct.
We affirm Miller's conviction but remand for resentencing in accordance with this opinion.
MORGAN, J., and BRIDGEWATER, Acting C.J., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).
[2] RCW 9.94A.120(4).
[3] The State acts vindictively when it intentionally files a more serious charge "in retaliation for a defendant's lawful exercise of a procedural right." State v. McKenzie, 31 Wash.App. 450, 452, 642 P.2d 760 (1981).
[4] Although Miller was convicted of attempted theft of a firearm, his sentence is affected by an increase in the seriousness level for theft of a firearm because the sentencing range for criminal attempt is calculated by determining the sentencing range for the completed crime and multiplying it by 75 percent. See RCW 9.94A.410.
[5] "Theft" means "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services." RCW 9A.56.020(1)(a). To "`wrongfully obtains' or `exerts unauthorized control' means: (a) To take the property ... of another..." RCW 9A.56.010(7)(a).
[6] CrR 8.3(b) provides:

The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.
[7] CrR 3.5(c) provides: "Duty of Court to Make a Record. After the hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor."
[8] The State argues that when the trial court has entered written findings in compliance with CrR 3.5, the appellate court may engage in an independent review of the record and make its own determination on the issue of voluntariness. See State v. Massey, 60 Wash.App. 131, 141, n. 6, 803 P.2d 340 (1990) (citing State v. Hoyt, 29 Wash.App. 372, 379, 628 P.2d 515 (1981); State v. Vickers, 24 Wash.App. 843, 846, 604 P.2d 997 (1979)); State v. Setzer, 20 Wash.App. 46, 49, 579 P.2d 957 (1978). This standard of review was expressly rejected by the State Supreme Court in Broadaway, 133 Wash.2d at 129, 942 P.2d 363.
[9] "The definition of `theft' ... under RCW 9A.56.020 shall apply to the crime of theft of a firearm." RCW 9A.56.300(4).
[10] RCW 9A.28.020 provides in part: "(1) A person is guilty of an attempt to commit crime if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime." For a definition of theft see discussion supra, page ___ and note 9.
[11] RCW 9A.36.031 provides in part:

A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
....
(g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.