# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| GEORGINA EDME SANDOVAL SANCHEZ, | No. 54535-7-II |
| Appellant, | |
| v. | |
| WILLIAM JOSEPH BLACKWELL, | UNPUBLISHED OPINION |
| Respondent. | |

SUTTON, J. — Georgina Edme Sandoval-Sanchez appeals from a domestic violence protection order prohibiting William Joseph Blackwell from contacting Sandoval-Sanchez and her daughter AG, but allowing contact with Sandoval-Sanchez and Blackwell's biological daughter AB. Sandoval-Sanchez argues that the trial court erred by not including AB as one of the protected parties and by not entering adequate written findings explaining AB's exclusion as required by RCW 26.50.060(7).[1]

Because there is nothing in the record demonstrating that the trial court considered the evidence of AB's exposure to domestic violence against a parent and Sandoval-Sanchez's fear that Blackwell would harm the child as required under *Rodriguez v. Zavala*, 188 Wn.2d 586, 594-95, 598, 398 P.3d 1071 (2017), and the trial court did not enter written findings of fact explaining why it declined to designate AB as a protected party, we remand this matter for reconsideration and, if necessary, the entry of adequate written findings.

---

[1] Blackwell has not filed a response.

FACTS

I. PETITION AND TEMPORARY PROTECTION ORDER

On December 24, 2019, Sandoval-Sanchez petitioned for a domestic violence protection order prohibiting Blackwell from contacting her and her two daughters, AG and AB.[2] AB is Blackwell's biological daughter. In her petition, which Sandoval-Sanchez signed under penalty of perjury, Sandoval-Sanchez asserted that she feared for her life and "the lives of [both] children." Clerk's Papers (CP) at 4. Sandoval-Sanchez requested an emergency temporary protection order effective immediately.

The trial court issued a temporary protection order that same day. The temporary order restrained Blackwell from contacting Sandoval-Sanchez and both children.

II. HEARING AND PROTECTION ORDER

Thirteen days later, the trial court heard evidence on Sandoval-Sanchez's petition. Both parties appeared without counsel.

Sandoval-Sanchez testified that throughout their relationship Blackwell had physically assaulted her, threatened to kill her, and attempted to control and isolate her by limiting her access to her car and phone and refusing to allow her to freely come and go from the home. She stated that he had "hurt [her] physically while [she] was pregnant and after [she] delivered" AB; and he would strike her (Sandoval-Sanchez) in front of the children. Verbatim Report of Proceedings (VRP) at 4.

---

[2] At the time of the petition, AG was four years old and AB was one year old.

Sandoval-Sanchez further testified that she had gone to work with black eyes, "busted lips," and a chipped tooth, and she lied about the cause of these injuries when her coworkers asked her about them. VRP at 4. She stated that she eventually jumped out of a window with the children to escape the abusive situation.

Sandoval-Sanchez's co-worker Wendy Gonzalez confirmed that Sandoval-Sanchez had "come to work with bruises all over her; [a] black eye; [and a] fat lip." VRP at 6. Gonzalez stated that Sandoval-Sanchez had told her that Blackwell "would pretty much control everything that she did," only allowed her to go to work, would take her keys, and she was not even allowed to "take her kids to appointments." VRP at 6. Gonzales further testified that she had "seen the bruises" and that she had "seen how it has affected [Sandoval-Sanchez] and the kids," but Gonzales did not describe how the children were affected. VRP at 7. Gonzales also testified that Blackwell would call Sandoval-Sanchez at work and that he had threatened to kill Sandoval-Sanchez during one of those calls.

Blackwell testified that "ninety percent of what [Sandoval-Sanchez was] saying [was] untrue." VRP at 9. He asserted that Sandoval-Sanchez was the one who was physically violent and controlling, she had a history of mental health issues, and she had a history of threating self-harm and threatening to leave the state with the children.

Blackwell asserted that he was not a threat to Sandoval-Sanchez or to the children and stated that he "just want[ed] to be in [his] daughter's life." VRP at 14-15. After the trial court advised the parties that this matter was not a custody case and that the custody matters needed to be addressed separately, Blackwell disclosed that Sandoval-Sanchez had "file[d] a parenting plan" and he was filing a response. VRP at 14. Blackwell asserted that Sandoval-Sanchez had told him

3

that she was seeking the protection order "out of pure spite" and that she wanted "help from the State and she will get [him] for domestic violence if she has to." VRP at 17.

Blackwell and Sandoval-Sanchez's former landlord Brittney Schallock testified for Blackwell. Schallock testified that, during their tenancy, she received frequent complaints from neighbors about Sandoval-Sanchez yelling at Blackwell and "throwing stuff around the property," and Sandoval-Sanchez "put[ ] holes in the walls" and broke a door. VRP at 12. Schallock stated that Sandoval-Sanchez "had apologized for her behavior and the destructiveness." VRP at 12. But Schallock had to ask them to leave due to Sandoval-Sanchez's "being violent." VRP at 12. In rebuttal, Sandoval-Sanchez asserted that Blackwell had kicked in the door when she had locked it to keep him away from her and the children and Blackwell had caused the holes in the wall when he threw a plate of food at her. In contrast, Blackwell asserted that Sandoval-Sanchez had broken the door by slamming it repeatedly.

After hearing this testimony, the trial court requested a copy of the proposed parenting plan that Sandoval-Sanchez had filed, and Sandoval-Sanchez provided one.[3] Blackwell told the court that he only wanted to be able to see his daughter, especially for her upcoming birthday.

The trial court stated that this was "a difficult case, because it's black and white on both sides" and both parties had presented witnesses. VRP at 19. The court noted that it was not unusual to have a pending parenting plan at the same time that something like this comes up because a history of domestic violence would impact the parenting plan.

---

[3] The proposed parenting plan is not part of the appellate record.

4

The trial court then stated:

> My concern is, that if I deny the Petition and I leave the parties exactly where they are, as far as [Blackwell is] concerned one of [his] requests now is that, you know, if the Court grants this Order it's for her and not the child. *I haven't heard anything that the child is at risk one way or the other, so if I were to grant an Order it would be for her and not the child.*
>
> But since there isn't a parenting plan in effect, visitation with this child still would be as the parties could agree, so . . . I don't solve that problem. So, one way I don't solve that problem is simply to deny the thing and you are out there on your own. The second [w]ay I solve it is make the Protection Order just the two of you and not the child, but then the visitation is still up in the air. I can certainly order a visit for a birthday --
>
> . . . .
>
> -- but that doesn't solve that problem on the long run -- the long run itself, by doing what you are doing, which is having this parenting plan entered. I can't give you legal advice, but when you file your Response [to Sandoval-Sanchez's proposed parenting plan] that's not going to set the matter for a temporary hearing. Somebody . . . needs to bring a motion for a temporary hearing and a notice of a temporary hearing. That's how that's done.
>
> . . . .
>
> So, what I am going to do is I'm going to grant the Order. I'm going to make it against [Sandoval-Sanchez and Blackwell]. I'm not going to include the child. I'm going to set forth a visitation for [Blackwell] and the child. There's two children, one is not [Blackwell's], [AG] would not be covered by any visitation one way or another.
>
> . . . .
>
> [Blackwell is] going to have -- the State of Washington is taking jurisdiction over [AB], or it did when filing of the parenting plan, so that's already happened, but -- [Blackwell is] going to be given visitations on -- with [AB] on 1/8/2020 from 9:00 a.m. to 12:00 noon. Further visitation is set forth in a parenting plan case already filed. The child shall not be removed from Longview during that visit and must be returned immediately after it's over.

VRP at 20-21, 25 (emphasis added).

The trial court then issued a domestic violence protection order prohibiting Blackwell from contacting Sandoval-Sanchez and AG; it did not include AB as a protected party. The trial court

also specifically allowed Blackwell visitation with AB on January 8, and "further visitation as set forth in the parenting plan case already filed." VCP at 20. The protection order did not contain any written findings regarding the court's decision not to include AB as one of the protected parties.

Sandoval-Sanchez appeals.

## ANALYSIS

Sandoval-Sanchez argues that the trial court erred (1) by not including AB as a protected party when there was evidence that AB had been exposed to the domestic violence against her mother and Sandoval-Sanchez feared that Blackwell would harm AB, and (2) by failing to enter written findings of fact explaining the decision to not include AB as a protected party. Because the record does not demonstrate that the trial court considered AB's exposure to domestic violence or Sandoval-Sanchez's fear that Blackwell would harm AB as required under *Rodriguez*, we remand for reconsideration and, if necessary, the entry of appropriate findings of fact.

## I. LEGAL PRINCIPLES

In *Rodriguez*, our Supreme Court held that a parent's fear for the safety of their child is a legitimate basis upon which to grant a domestic violence protection order. 188 Wn.2d at 594-95. The court also held that a child's exposure to domestic violence against a parent "constitutes domestic violence under chapter 26.50 RCW." *Rodriguez*, 188 Wn.2d at 593, 598.

Additionally, when a trial court declines to issue a protection order it is required to "state in writing on the order the particular reasons for the court's denial." RCW 26.50.060(7). If the trial court fails to enter such findings, this omission may be harmless if the court's oral ruling is sufficient to allow for our review. *See State v. Miller*, 92 Wn. App. 693, 703, 964 P.2d 1196 (1998)

(failure to enter written findings and conclusions of law as required by CrR3.5(c) is harmless if oral findings are sufficient for appellate review).

## II. RISK OF HARM

Sandoval-Sanchez argues that the trial court erred by not including AB as protected party when there was evidence that AB had been exposed to domestic violence and that she (Sandoval-Sanchez) feared that Blackwell would harm AB, and by failing to enter written findings of fact explaining its decision to exclude AB as a protected party. Sandoval-Sanchez correctly asserts that a child's exposure to domestic violence against a parent can be harmful to the child and "such exposure constitutes domestic violence under chapter 26.50 RCW." *Rodriguez*, 188 Wn.2d at 598; she is also correct that a parent's fear that the other parent will harm a child can also be grounds for issuing a domestic violence protection order even if the child is unaware of the potential harm. *Rodriguez*, 188 Wn.2d at 594-95. And the record shows that Sandoval-Sanchez presented evidence regarding both AB's exposure to domestic violence and Sandoval-Sanchez's fear that Blackwell would harm AB.

Despite this evidence, the trial court stated in its oral ruling that it had not "heard anything that the child is at risk one way or the other." VRP at 20. The trial court's oral statement that it had not heard anything suggesting that AB was at risk suggests that the trial court did not consider evidence that was relevant under *Rodriguez*. And because there were no written findings or oral findings as to credibility, the record does not disclose whether the trial court considered the evidence but found it not to be credible. Additionally, the trial court did not enter the written findings of fact explaining why it declined to include AB as one of the protected parties as required under RCW 26.50.060(7).

No. 54535-7-II

Because record does not show that the trial court considered the factors found relevant in *Rodriguez* and the trial court did not enter written findings of fact required under RCW 26.50.060(7), we remand for reconsideration and, if necessary, entry of written findings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

GLASGOW, A.C.J.

VELJACIC, J.