FILED
COURT OF APPEALS
DIVISION II

2014 OCT 14 AM 8: 55

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44172-1-II |
| Respondent, | |
| v. | |
| JOHN MICHAEL BALE, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — John Michael Bale appeals his convictions for two counts of first degree assault with a deadly weapon, and one count of possessing a stolen firearm. Bale argues that (1) insufficient evidence supports his assault convictions because the State failed to prove that Bale intended to cause great bodily harm, and (2) insufficient evidence supports his conviction for possessing a stolen firearm because the State failed to prove that Bale knew the gun was stolen. Bale also raises several issues in his statement of additional grounds (SAG). We hold that sufficient evidence supports Bale's convictions for two counts of first degree assault, and we affirm those convictions. But we further hold that the evidence was insufficient to support Bale's conviction for possessing a stolen firearm and we reverse this conviction and remand for an order dismissing this charge with prejudice.

## FACTS

### I. SUBSTANTIVE FACTS

On July 2, 2012, Officers Stephen Morrison and Charles Schandel contacted three males in a trailer park as part of a narcotics investigation. One of the men contacted was Bale. The

officers requested Bale's identification, but he claimed he was unable to find it. Morrison, fearing for the officers' safety due to Bale's "nervous" demeanor, decided to place wrist restraints on Bale to "detain him [and] frisk him for weapons." 1 Verbatim Report of Proceedings (VRP) at 65-66. Morrison reached for Bale's wrist, but "as soon as [Morrison] went hands on with [Bale], he start[ed] pulling away." 1 VRP at 67. Bale then broke free and ran.

The officers pursued Bale, catching up to him and tackling him. When Morrison tackled Bale, Morrison heard a metallic noise, which he later recognized as a pistol being racked. The officers saw Bale gripping a pistol in his right hand. Morrison noticed that the gun's hammer was back, indicating that the gun was cocked. Morrison testified that seeing the cocked gun put him in fear for his life because "there's only one reason to cock a gun . . . and that's to shoot it." 1 VRP at 74. The gun would not fire without being cocked, but once cocked, the gun would fire with only slight pressure on the trigger.

Schandel testified that Bale "had a death grip on that gun." 2 VRP at 153. Morrison gripped the gun's barrel in an attempt to prevent Bale from shooting. Morrison yelled at Bale to "drop the gun." 1 VRP at 75. Instead, Bale turned and began to aim the gun towards Morrison's chest at a distance of a few inches. Morrison had his hands on the gun's slide, meaning that if fired, the gun would "more than likely fire one round and malfunction." 1 VRP at 77. Morrison was able to wrest the gun away from Bale's grip. The entire struggle lasted five to ten seconds, and Bale at no time attempted to point the gun away from the officers. Bale said nothing during the struggle. Both officers were in fear of being shot.

Bale got away again and continued to run from the officers who chased him. Finally, Morrison apprehended Bale with the use of a stun gun. Morrison thereafter disabled Bale's gun,

which was loaded. Officers also found a nylon ankle holster lying between Morrison's patrol car and the location of the struggle.

The gun belonged to John Hagenson, who said the gun had "come up missing" around June 26. 2 VRP at 174. Hagenson suspected that his stepson Benjamin Roberts had taken the gun because there had been no forced entry into Hagenson's gun safe, and when asked about the weapon, Roberts said, "[H]e could get it back." 2 VRP at 178. Hagenson claimed that Roberts and Bale were longtime close friends, and that they had been in contact around the date of Bale's incident with the officers. Hagenson believed that Bale must have known Roberts had stolen the weapon because "they know each other's pasts" and Roberts was not "allowed to have firearms." 2 VRP at 176, 180.

## II. PROCEDURAL FACTS

The State charged Bale in an amended information with two counts of first degree assault (for assaulting Morrison and Schandel, respectively), and one count of possessing a stolen firearm. A jury found him guilty as charged. Bale appeals.

## ANALYSIS

### SUFFICIENCY OF EVIDENCE

Bale argues that insufficient evidence supports his convictions for first degree assault because the State failed to prove beyond a reasonable doubt that he intended to cause great bodily harm. He argues that (1) the evidence shows he merely intended to frighten the officers, (2) he had an opportunity to shoot and did not take it, and (3) there was no verbal communication of an intent to shoot. He further argues that the State failed to prove first degree assault of Schandel because Bale aimed the gun at Morrison alone. We disagree.

Bale also argues that the State failed to prove beyond a reasonable doubt that he knew the firearm was stolen. We agree.

A.    *Standard of Review*

When we review a sufficiency challenge to a conviction, we determine whether, "after viewing the evidence most favorable to the [State], any rational trier of fact could have found the essential elements" of the crime "beyond a reasonable doubt." *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (emphasis omitted). "A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it." *State v. O'Neal*, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007).

B.    *First Degree Assault—Intent To Cause Great Bodily Harm*

Bale first argues that the State failed to present evidence that he intended to inflict great bodily harm, rather than intended to merely frighten the arresting officers. He argues that because the evidence shows he did not fire the gun when he had the chance and that he never verbally communicated an intent to inflict harm, the State proved only second degree assault, which does not include the element of intent to cause great bodily harm.

As relevant here, under RCW 9A.36.011, first degree assault occurs when a person, "with intent to inflict great bodily harm . . . [a]ssaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death." RCW 9A.36.011(1)(a). Intent is present when a person "acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010. "Evidence of intent . . . is to be gathered from all of the circumstances of the case." *State v. Ferreira*, 69 Wn. App. 465, 468, 850 P.2d 541 (1993) (quoting *State v. Woo Won Choi*, 55 Wn. App. 895, 906, 781 P.2d 505 (1989)).

4

Our inquiry on appeal is whether any rational trier of fact could have found beyond a reasonable doubt that Bale intended to cause great bodily harm. *Green*, 94 Wn.2d at 221-22. Here, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Bale drew and cocked his weapon with intent to shoot Morrison and Schandel. The officers found an ankle holster along the path where Bale ran from Morrison's patrol car to the site of the struggle, indicating that Bale separated the holster and the gun and discarded only the holster. The officers saw the gun's hammer was pulled back, indicating that it was cocked. Additionally, Bale refused to drop the gun when commanded to do so, pointed the gun at Morrison's chest at a close range, and pushed against Morrison's attempts to point the gun away.

Regarding Bale's argument that he had an opportunity to shoot and did not take it, firing a weapon given an opportunity is neither an element of first degree assault nor part of the definition of intent.[1] *See* RCW 9A.36.011; RCW 9A.08.010. In addition, the evidence, viewed in the light most favorable to the State, proves that Bale did not have an opportunity to fire the gun.

Courts have upheld first degree assault convictions on facts similar to these. For example, in *State v. Anderson*, Division One of this court held that sufficient evidence existed to

---

[1] Bale points us to where the testimonies of the two officers conflict: Morrison testified that "Bale had the opportunity to shoot [Morrison] but did not do so," whereas Schandel testified that "Bale never had the ability to shoot because the officers jumped him and grabbed the gun and kept it pointed away from themselves." Br. of Appellant at 4. We resolve this discrepancy in favor of the State. We "must defer to the trier of fact on issues involving conflicting testimony, credibility of the witnesses, and the persuasiveness of the evidence." *State v. Hernandez*, 85 Wn. App. 672, 675, 935 P.2d 623(1997).

show that the defendant intended to inflict great bodily harm where the defendant "began a vigorous and prolonged attempt to take [the victim's] weapon by force . . . . [The defendant] used both hands to push the weapon toward [the victim's] head." 72 Wn. App. 453, 459, 864 P.2d 1001 (1994). The facts in *Anderson* are comparable to the facts here: the defendant did not fire the weapon, and yet the court determined that sufficient evidence of intent to cause great bodily harm existed because the defendant continued to struggle with the victim and point the weapon at him. 72 Wn. App. at 459. There is no requirement that a weapon be fired before a jury can find intent to cause great bodily harm.

Regarding Bale's argument that he did not verbally communicate his intent to cause great bodily harm, verbal communication of a threat is not a required element of first degree assault, nor part of the definition of intent. *See* RCW 9A.36.011; RCW 9A.08.010. The State was required to prove that Bale had the object or purpose to commit great bodily harm, not that he communicated his desire to do so. RCW 9A.08.010. Viewing the evidence in the light most favorable to the State, there was sufficient evidence to support the jury's finding of intent through Bale's physical actions of removing the gun from its holster, cocking it, pointing it at the officers, and struggling against attempts to push the gun away.

C.      *First Degree Assault Against Schandel*

Bale argues that the State failed to prove the second count of first degree assault—the assault against Schandel—because Bale aimed the gun at Morrison alone. We disagree.

Viewing the evidence in the light most favorable to the State, Bale pulled the gun from the holster while fleeing from both Morrison and Schandel. Bale pointed the gun only at Morrison, but he struggled with both officers in an attempt to get away. Schandel believed that

6

Bale would shoot Morrison and then immediately shoot Schandel, if given the opportunity. The gun was cocked during the struggle with both officers. Taken together, these facts could have led a rational trier of fact to find beyond a reasonable doubt that Bale intended to shoot both officers, although he managed to point the gun only at Morrison. Therefore, because a rational trier of fact could have found beyond a reasonable doubt that Bale intended to cause great bodily harm to both Morrison and Schandel, sufficient evidence supports both first degree assault convictions.

D.    *Possession of a Stolen Firearm—Knowledge that the Firearm was Stolen*

Bale next argues that the State failed to prove beyond a reasonable doubt that he knew the firearm was stolen. We agree.

In order for the State to prove that Bale unlawfully possessed a stolen firearm, it had to prove (1) he possessed, carried, delivered, sold, or was in control of a stolen firearm; (2) he acted with knowledge that the firearm had been stolen; and (3) he withheld or appropriated the firearm to the use of someone other than the true owner or person entitled thereto. RCW 9A.56.310; RCW 9A.56.140. "Knowledge" means that a person "is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or . . . has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense." RCW 9A.08.010(1)(b).

Here, insufficient evidence supports the essential element that Bale knew the firearm was stolen. Even accepting the State's evidence as true and viewing all evidence in the light most favorable to the State, no rational trier of fact could have found beyond a reasonable doubt that Bale knew the firearm was stolen.

The only evidence the State presented to prove this charge was the testimony of Hagenson, the gun's true owner. He suspected his stepson Roberts of having taken his gun, which went missing about a week before Bale's incident with the police. He said Bale and Roberts were close friends, and Hagenson thought they had been in contact around the time of the incident.

Hagenson also said that Bale and Roberts "knew each other's pasts," so he thought Bale would have known that Roberts was not "allowed to have firearms." Taken together, these statements by Hagenson—almost all of them merely stating his beliefs about Roberts' activity and Bale's state of mind—would not permit a rational trier of fact to conclude beyond a reasonable doubt that Bale knew the gun he possessed was stolen. There was no evidence, for example, that Bale received the gun from Roberts. And even if Bale knew that Roberts was not allowed to have firearms, this does not lead to a conclusion that any firearm Roberts possessed was necessarily stolen. Insufficient evidence supports this count, and we reverse Bale's conviction for possession of a stolen firearm.[2]

## STATEMENT OF ADDITIONAL GROUNDS

In his statement of additional grounds, Bale raises several additional points. He claims that 1) insufficient evidence supports his conviction on several grounds, 2) the State violated his rights to a speedy trial, 3) his original attorney of record violated the attorney-client privilege, 4) the participation of a prosecutor with a conflict of interest violated his due process rights, 5) the court violated his Sixth Amendment right to counsel of choice when it denied his request to

---

[2] Bale also argues that the charging document was constitutionally deficient because it failed to allege that Bale knew the firearm he possessed was stolen. Because we reverse his conviction for possession of a stolen firearm, we do not reach this issue.

substitute counsel, 6) he received ineffective assistance of counsel, 7) the county violated his due process rights by denying him access to the law library, and 8) private peremptory challenges violated his right to a public trial. Aside from the arguments relating to the charge of possession of a stolen firearm, these claims are without merit.

## I. INSUFFICIENT EVIDENCE

### A.     *No Intent To Harm*

Bale first states," I had no intent of harming any one [sic] and . . . no weapon was pointed at any officer at any time." SAG at 2. As stated above, the question on appeal is whether any rational trier of fact could have found Bale's intent to cause great bodily harm beyond a reasonable doubt, and it could. This issue therefore fails.

### B.     *No Knowledge of Stolen Firearm*

Bale also claims that he did not know the firearm was stolen. As we stated above, insufficient evidence supports Bale's conviction for unlawful possession of a stolen firearm, and we reverse and dismiss this charge.

### C.     *No Fingerprints*

Bale further claims that there was "insufficient evidence to support a guilty conviction on the grounds on failing to provide finger prints [sic] on the weapon. The prosecutor put the weapon in the lab and tested it for fingerprints and my D.N.A. It came back negative on both. This did not prove all of the elements of the crime." SAG at 6. However, fingerprinting and DNA (deoxyribonucleic acid) matching are not elements of the crimes for which Bale was convicted. *See* RCW 9A.36.011. As discussed above, sufficient evidence supports his

convictions for first degree assault. This same evidence supports the jury's special verdict finding that Bale was armed. This claim fails.

D. *No Substantial Bodily Harm*

Bale claims that the "evidence was insufficient to establish that the victim suffered substantial bodily harm as required in order to convict defendant of first or second degree assault." SAG at 6. But "substantial bodily harm" is not a requirement of first or second degree assault; the State merely must prove that the defendant acted with the *intent* to inflict great bodily harm to prove first degree assault. *See* RCW 9A.36.011. Therefore, this claim fails.

## II. SPEEDY TRIAL

Bale claims that the proceedings violated his right to a speedy trial, arguing: "I did not sign or waiver [sic] my rights to a speedy trial. They threatened me if I did not sign a court document that waived my speedy trial rights that I would go to SAG." SAG at 2. Bale similarly argues that "Kitsap county does an illegal process called 'Bind over.' It is the process of holding you in district court for sixty day's [sic] on felony charges, then moving you to superior court," in violation of the right to a speedy trial. SAG at 5.

Bale waived the speedy trial right issue by not raising it within 10 days after notice of the trial date. CrR 3.3(d)(3). According to the superior court criminal rules, "[a] party who fails, for any reason, to make [a motion objecting to the date for trial] shall lose the right to object that a trial commenced on such a date is not within the time limits prescribed by this rule." CrR 3.3(d)(3). Bale made no such motion. Moreover, "'[t]rial within 60 days is not a constitutional mandate.' There is 'no constitutional basis for holding that the speedy trial right can be

10

quantified into a specified number of days or months.'" *State v. Carson*, 128 Wn.2d 805, 821, 912 P.2d 1016 (1996). Therefore, this claim fails.

### III. ATTORNEY-CLIENT CONFIDENTIALITY

Bale argues that his attorney violated attorney-client confidentiality by "willfull[y] disclos[ing] information to the prosecuter [sic] regarding evidence (the gun)." SAG at 4. He alleges that this disclosure violated Rule 1.6 of the Rules of Professional Conduct. Although Bale's SAG claims that certain discussions occurred on the record, there is no evidence of this discussion in our record on appeal, and we do not consider it. RAP 2.5; *State v. McFarland*, 127 Wn.2d 322, 332-34, 899 P.2d 1251 (1995).

### IV. DUE PROCESS VIOLATION: PROSECUTOR'S PARTICIPATION

Bale argues that his due process rights were violated when the prosecutor continued on the case. He avers that he requested the removal of both his counsel and the prosecutor. Then, after a week of investigation into the request by the judge, the prosecutor returned to the case. Bale argues that this violated his due process rights. This claim refers to matters outside the record, and we do not consider it. RAP 2.5; *McFarland*, 127 Wn.2d at 332-34.

### V. SIXTH AMENDMENT RIGHT TO COUNSEL

Similarly, Bale argues that his Sixth Amendment right to counsel was violated when the judge did not appoint him new counsel after he alleged a "complete breakdown of communication" with defense counsel. SAG at 4. On October 4, 2012, the court heard Bale's motion to substitute counsel. In his motion, Bale named his grievances, including defense counsel's refusal to send various documents to Bale, and his apparent tendency for

No. 44172-1-II

tardiness.[3] The court denied the motion, finding that there was "an insufficient factual basis" for it. VRP (Oct. 4, 2012) at 5. The court also explained to Bale that "when you are represented by an attorney, all motions are to be filed by your attorney, not by yourself." VRP (Oct. 4, 2012) at 5.

---

[3] Bale explained his grievances to the trial court as follows:

I had asked [defense counsel] the first day I met him for discovery and police reports that he failed to provide.

Two, weapon fingerprinted. He said it wouldn't matter. Now waiting to do anything until the prosecutor had basically —I had asked him on the first day. You know, that was supposed to happen a long time ago, and it hasn't.

Three, let me use law library. He said yes. Never put motions in. And I reminded him repeatedly. This was, basically, a long time ago. And I kind of—I kind of know a little bit about the law, and I have—So, basically, it's been months now. We're basically—have been in custody for almost 100 days now and he had never—Basically, I . . .

He's always late to court. Every time I'm here, I'm always wondering if he's going to show up. I have called repeatedly only to have rude desk lady answer and/or a full message machine. I have not—Or he leaves work early. I have not— And with the Kitsap County Jail, we're out on the upper tier and we basically only have an hour and a half, and, basically, he's gone by the time I can get out to call. And I have asked him to read police reports in the messages.

I have entered motions; never checked up on. I have entered motions in the courtroom; they have not been heard, not one of them. I personally have entered motions. I have mailed them. I got the letters back and everything.

Previously, we were supposed to have trial last—what was it, what was it—the last time I was here in court, and the investigator came to me a week before, a week before we were supposed to go to trial.

I have objected twice because I know my rights and I haven't waived my rights. I have not wrote my rights away. I have not signed. Because I know once you sign that piece of paper that says if you object within ten business days right there stated on it, and I have objected twice. I just think he's unprofessional. I don't think he's well prepared to defend me. I have entered—Okay. We have already gone over that one.

Not—Time has been—So I just—There's just—I just don't have faith in him right now or—And I have tried to work it out, me and him tried to work it out. But I just don't have faith in him.

VRP (Oct. 4, 2012) at 3-5.

The trial court has discretion to determine whether "an indigent defendant's dissatisfaction with his court-appointed counsel is meritorious and justifies the appointment of new counsel." *State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991). A defendant does not have an absolute, Sixth Amendment right to choose any particular advocate. 117 Wn.2d at 375-76. Here, the trial court heard Bale's arguments for removing and substituting defense counsel, and the trial court ruled that they were merely "personal" conflicts not warranting substitution of counsel. This decision was within the trial court's discretion.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Bale next argues that he received ineffective assistance of counsel, in violation of the Sixth Amendment. He argues that defense counsel failed to obtain for him "compulsory process for obtaining witnesses in [my] favor." SAG at 4.

"When an ineffective assistance claim is raised on appeal, the reviewing court may consider only facts within the record." *State v. Grier*, 171 Wn.2d 17, 29, 246 P.3d 1260 (2011). Bale supplies no explanation for this claim; he does not say, and the record does not show, when defense counsel failed in an attempt to call a witness. Under *Grier*, therefore, we have no basis for evaluating the ineffective assistance of counsel claim, because the alleged flaw is not apparent in the record, and we do not consider it. 171 Wn.2d at 29; *see also* RAP 2.5; *McFarland*, 127 Wn.2d at 332-34.

## VII. DUE PROCESS RIGHTS TO COUNTY LAW LIBRARY

Bale argues that his due process rights were violated when he could not use the county law library. The factual basis for his argument is unclear; he moved for access to the Kitsap County Jail law library, and the court granted his motion.

13

Prisoners have a "fundamental constitutional right of access to the courts," which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries." *Bounds v. Smith*, 430 U.S. 817, 828, 52 L.Ed. 72, 97 S. Ct. 1491 (1977). However, this right "ensure[s] a meaningful *pro se defense*." *State v. Bebb*, 108 Wn.2d 515, 524, 740 P.2d 829 (1987) (emphasis added). Bale was represented by counsel. More importantly, the court granted his motion for access to the law library. It is unclear from the record whether the County ignored or otherwise failed to give effect to the court order granting access; however, the trial court granted his motion for access, and therefore did not violate his rights.

## VIII. PRIVATE PEREMPTORY CHALLENGES

Bale finally argues that the trial violated his Sixth Amendment right to a public trial because the parties exercised private peremptory challenges. Bale explains that "[t]he court directed counsel to exercise peremptory challenges by passing a piece of paper back and forth. The court then excused juror's [sic] and seated other venire members in the excused juror's seats." SAG at 5. Bale claims that this procedure violated his right to a public trial.

The record does not contain the transcript of voir dire. When a defendant raises a public trial right claim for the first time on appeal, "'the trial record must be sufficient to determine the merits of the claim.' [T]he appellant bears the responsibility to provide a record showing that . . . a closure occurred in the first place." *State v. Koss*, No. 85306-1, slip op. at 11-12 (Wash. Sept. 25, 2014) (citations omitted). There are no facts in the record supporting Bale's claim that the court conducted the peremptory challenges privately, and we do not consider it. RAP 2.5; *McFarland*, 127 Wn.2d at 332-34.

14

No. 44172-1-II

CONCLUSION

We affirm Bale's convictions on both counts of first degree assault with a deadly weapon. However, because insufficient evidence supports it, we reverse his conviction for the count of possessing a stolen firearm and remand with instructions to dismiss with prejudice.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Maxa, J.

_____
Lee, J.

15