# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 49491-4-II |
| STEVEN DANIEL KRAVETZ, | UNPUBLISHED OPINION |
| Petitioner. | |

LEE, J. — In 2013, Steven Daniel Kravetz was convicted of first degree assault, disarming a law enforcement officer, and second degree assault. We affirmed his convictions on direct appeal.[1] Kravetz then filed a personal restraint petition (PRP), and we accepted review.

In his PRP, Kravetz argues that (1) his defense counsel at trial was ineffective because he failed to (a) move for suppression of certain documents found during a search of his mother's home, (b) ask the sentencing court to find the crimes of disarming an officer and first degree assault constitute the same criminal conduct, and (c) raise the issue of double counting in regards to his exceptional sentence; and (2) the sentencing court erred by (a) refusing to find the mitigating factor of mental illness and (b) using future dangerousness as a basis for his exceptional sentence.

We hold that (1) defense counsel did not provide ineffective assistance and (2) the sentencing court did not err. Accordingly, we deny this petition.

---

[1] *State v. Kravetz*, noted at 185 Wn. App. 1058, *review denied*, 183 Wn.2d 1015 (2015).

FACTS

A.    THE INCIDENT

On March 9, 2012, Kravetz went to the Grays Harbor County Courthouse. Kravetz was standing around and a court administrator became suspicious. The administrator reported Kravetz to the sheriff's office.

Sheriff's Deputy Polly Davin went to the courthouse and contacted Kravetz. She asked him for his name and identification. Kravetz told her his name was Michael Thomas because he knew he had an outstanding bench warrant. Deputy Davin then reached for Kravetz's elbow to steer the conversation outside. At that point, Kravetz grabbed Deputy Davin, threw her on the ground, and got on top of her. A judge in the courthouse came downstairs and pushed Kravetz off the deputy. Kravetz stabbed the judge in the neck. Deputy Davin drew her gun, but Kravetz took it away from her, took a step back, and shot her in the arm. Kravetz then left the courthouse.

B.    THE WARRANT AND SEARCH

The next day, Kravetz's mother called the police after hearing that they were looking for her son. Kravetz's mother told the police where she lived with Kravetz and gave them permission to search the home.

The police got a search warrant to search the home. Police then went to Kravetz's home where they arrested Kravetz and searched the home. The police found the gun, knife, clothes, and bag in the home. The police also found in some boxes in the garage a brochure with a sketch of the Grays Harbor County Courthouse and a file marked "master plan" with pictures and information on Sheriff's Deputy David Libby. The police collected these items and documents and put them into evidence.

C.     TRIAL

The State charged Kravetz with second degree attempted murder, along with a firearm sentencing enhancement and an aggravating factor that he knew the victim was a law enforcement officer performing her official duties (count 1); first degree assault, along with a firearm sentencing enhancement and an aggravating factor that he knew the victim was a law enforcement officer performing her official duties (count 2); disarming a law enforcement officer (count 3); and first degree assault, along with a deadly weapon sentencing enhancement (count 4). Kravetz claimed diminished capacity.

1.     Admission of Sketch, Libby Photograph, and Police Interview

At trial, the sketch and Libby's photograph were admitted. The recording of Kravetz's police interview was also admitted and played for the jury. In his police interview, Kravetz stated that he believed that there was a conspiracy to cover up an incident between him and the police in 2005 and that there was information the county did not want the public to see. He was trying to obtain information that would identify and expose the people involved in the 2005 incident where he claimed he was raped. He admitted that he had been to the courthouse previously as part of a recognizance trip. He obtained a photograph of and some personal information on Deputy Libby.

Kravetz explained that in 2005, his mother called the police. The police took the call as a suicide complaint, and Deputy Libby and other officers came to Kravetz's home. Deputy Libby frisked Kravetz and took him to the hospital for a mental health evaluation. At the hospital, Kravetz refused attempts to take his temperature and to provide a urine sample. After he tried to escape, a rectal thermometer and catheter were used to obtain his temperature and urine sample. Kravetz was then taken to jail where he said he was strip searched and shot with a stun gun after

refusing to comply. This experience traumatized Kravetz. Kravetz believed he was raped and wanted to identify the people involved.

Kravetz further explained that he was at the courthouse on March 9 to find and take the files for two cases he had been involved in. He wanted to get the case files to expose the county even though he knew it would be illegal. Kravetz acknowledged that his actions were not legally justified and morally wrong.

2.    Doctors' Testimony on Kravetz's Mental Health

Dr. David Dixon diagnosed Kravetz with delusional disorder and paranoid personality. He believed that Kravetz was preoccupied by a delusion that he had been raped in 2005, and the delusion "was interrupting, constricting his life, dominat[ing] his insight, comprehension and judgment." 5 Verbatim Report of Proceedings (VRP) at 438. Dr. Dixon stated that Kravetz's contact with the sheriff's deputy at the courthouse triggered his fear of being apprehended and assaulted. Dr. Dixon opined that although Kravetz was driven by a delusional system and impaired, he had the capacity to act with intent. And Kravetz was able to "form purpose," had the ability to perform "purposeful goal oriented behaviors," and knew right from wrong. 5 VRP at 426, 462.

Dr. Brett Trowbridge diagnosed Kravetz with delusional paranoid disorder. Dr. Trowbridge stated that Kravetz's previous interactions with police led him to fear that any contact with a sheriff's deputy would lead to rape because he viewed a normal search as some sort of sexual assault. Dr. Trowbridge believed that Kravetz knew right from wrong, could appreciate the quality of his acts, and knew his actions were legally wrong. Dr. Trowbridge also stated that Kravetz could act intentionally and was not impaired in that area, and that his actions were goal oriented but based on a delusion that Grays Harbor County was trying to rape him.

4

Dr. Marilyn Ronnei diagnosed Kravetz with a psychotic disorder, most likely paranoid schizophrenia. Dr. Ronnei stated that Kravetz had a delusion that stemmed from a 2005 incident, Kravetz likely spent seven years ruminating daily over the incident, and Kravetz was still preoccupied with the incident during his evaluation. Dr. Ronnei opined that Kravetz could act intentionally with the purpose to accomplish a result despite his persecutory delusions. Kravetz's capacity to form intent was not impaired.

D.    VERDICT AND SENTENCING

The jury found Kravetz not guilty of second degree attempted murder (count 1). But the jury found Kravetz guilty of first degree assault on Deputy Davin (count 2), disarming a law enforcement officer (count 3), and second degree assault on the judge (count 4). For first degree assault, the jury also found that Kravetz was armed with a firearm during the commission of the offense, the offense was committed against a law enforcement officer who was performing her official duties, and Kravetz knew when he committed the offense that the victim was a law enforcement officer. And for second degree assault, the jury found that Kravetz was armed with a deadly weapon during the commission of the offense.

Before sentencing, the State presented a report stating that for the first degree assault conviction (count 2), Kravetz had an offender score of 4, which resulted in a standard range sentence of 129 to 171 months. The jury's firearm enhancement finding added 60 months to the standard range sentence for the first degree assault conviction. And the sentencing court could impose an exceptional sentence for the first degree assault conviction based on the jury's findings that the crime was committed against a law enforcement officer performing her official duties and that the defendant knew the victim was a law enforcement officer. For unlawfully disarming a law enforcement officer (count 3), an unranked offense, the standard range sentence was 0 to 365 days.

For second degree assault (count 4), the standard range sentence with an offender score of 4 was l5 to 20 months. The jury's deadly weapon enhancement finding added 12 months to the standard range sentence for the second degree assault conviction.

At sentencing, defense counsel asked the sentencing court to find that mitigating circumstances existed and to impose an exceptional sentence below the standard range. Specifically, defense counsel asked the court to find that Kravetz could not appreciate the wrongfulness of his conduct or that his ability to conform his conduct to the requirements of the law were significantly impaired. Defense counsel asserted that Kravetz had a severe mental disorder that justified an exceptional sentence downward. Defense counsel pointed out that all the doctors testified that Kravetz suffered from severe delusions.

The sentencing court imposed an exceptional sentence of 240 months for the first degree assault conviction, along with an additional 60 months for the firearm enhancement. The sentencing court also found that an exceptional sentence upward was justified because the jury found that Kravetz committed the crime against a law enforcement officer performing her official duties and knew that she was a law enforcement officer when committing the crime. For the unlawfully disarming a law enforcement officer conviction, the sentencing court imposed a standard range sentence of 364 days. For the second degree assault conviction, the sentencing court imposed a standard range sentence of 20 months, along with an additional 12 months for the deadly weapon enhancement. In doing so, the sentencing court orally stated,

> [Defense counsel] says, well, you've got all kinds of mental issues. I will grant you that the testimony was that you have a number of mental issues. I also think you are delusional. I also think that you are obsessive, because that clearly came through in the testimony that was presented. But, unfortunately, Mr. Kravetz, you are also very dangerous, because there's no doubt in my mind that were you not before the Court today in handcuffs and in a situation where law enforcement is here to keep you from acting out, that you would easily act out again.

> I suspect if you were out in the public, given an opportunity to do something like this, you would clearly do it again. . . . As far as I'm concerned, it's not going to happen.
>
> . . . .
>
> Quite frankly, I think all of the requests made by the prosecuting attorney have merit. I think under the circumstances, Mr. Kravetz, one of the things this Court needs to do is to put you in a position where you are not going to be capable of hurting anybody for a very long period of time.
>
> I also think that if and when you do see the light of day as a free man again it's under circumstances where you are so old and feeble that you can't possibly do something like this over again. This was an attack, as far as I am concerned, on the public, on the citizens of Grays Harbor County.

VRP (May 17, 2013) at 40-42. In its findings of fact and conclusions of law, the sentencing court ruled that it imposed an exceptional sentence because (1) the jury unanimously and beyond a reasonable doubt found as an aggravating circumstance that the first degree assault charged in count 2 was committed against a law enforcement officer who was performing her official duties at the time of the offense, the offender knew that the victim was a law enforcement officer, and the victim's status as a law enforcement officer was not an element of the crime of first degree assault; and (2) the jury's finding was supported by evidence beyond a reasonable doubt.

ANALYSIS

A.    PERSONAL RESTRAINT PETITION

We may grant relief on a PRP only if the petitioner is under unlawful restraint as defined by RAP 16.4(c). *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 16, 296 P.3d 872 (2013). The collateral relief afforded under such a petition is limited and requires the petitioner to show that he was prejudiced by the error in the trial court. *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 819, 650 P.2d 1103 (1982). There is no presumption of prejudice on collateral review. *Id.* at 823.

A personal restraint petitioner must show either a constitutional error that caused actual prejudice or a nonconstitutional error that results in a complete miscarriage of justice. *In re Pers.*

*Restraint of Stockwell*, 161 Wn. App. 329, 334, 254 P.3d 899 (2011), *aff'd*, 179 Wn.2d 588, 316 P.3d 1007 (2014); *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). Without either showing, we must dismiss the petition. *Cook*, 114 Wn.2d at 810-11. A personal restraint petitioner alleging a violation of his constitutional right to effective representation meets his burden to show actual and substantial prejudice when he makes a successful ineffective assistance of counsel showing. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 842, 280 P.3d 1102 (2012).

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Kravetz argues that he received ineffective assistance of counsel at trial because defense counsel failed to (1) move to suppress the documents found in some boxes in the garage, (2) ask the sentencing court to find that disarming an officer and first degree assault constituted the same criminal conduct, and (3) raise the issue of double counting in regards to imposing an exceptional sentence. We disagree.

The right to effective assistance of counsel is afforded criminal defendants by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). To establish ineffective assistance of counsel, Kravetz must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If Kravetz fails to establish either prong of the test, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). There is a strong presumption of effective assistance, and Kravetz bears the burden of rebutting that

presumption by showing the lack of a legitimate strategic or tactical reason for the challenged conduct. *McFarland*, 127 Wn.2d at 336. Resulting prejudice must also occur, and Kravetz must demonstrate there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 335.

1. Failure to Move to Suppress Documents

Kravetz argues that defense counsel provided ineffective assistance because he failed to move to suppress the documents found in some boxes in the garage because the warrant was partially overbroad and the documents were outside the scope of the warrant. Assuming without deciding that defense counsel was deficient, we hold that Kravetz fails to show the requisite prejudice.

Kravetz argues that admission of the sketch and Libby's photograph prejudiced him because the prosecutor used both the sketch and photograph to argue that he had the ability to form the intent to inflict great bodily harm on Deputy Davin. Kravetz also relies on the fact that the State used the sketch to argue that Kravetz did not have a mental illness that prevented him from forming the intent required to commit the charged crimes.

But Kravetz fails to show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. At trial, a multitude of other evidence was presented to show that Kravetz had the capacity to form the requisite intent. Dr. Dixon, Dr. Trowbridge, and Dr. Ronnei all testified that Kravetz had the ability to act with intent. They also believed that Kravetz knew right from wrong, could make purposeful decisions, and appreciated the quality of his acts.

Kravetz himself provided evidence that he had the capacity to form intent. He explained in his police interview that the number one thing in his life was to resolve what happened to him.

Kravetz told police how he believed he was raped in 2005, wanted to identify the people that were involved in that incident, suspected the county had information and files about the incident it did not want people to see, and conducted recognizance on the courthouse where he thought such information and files were located. Kravetz knew what he planned was illegal.

Kravetz also explained that he went to the courthouse with the intention of sneaking into the offices to find and take the case files with information concerning the 2005 incident. When Kravetz was there, Deputy Davin questioned him and he told her his name was Michael Thomas; he knew he had a bench warrant against him and was worried that she would find out. Kravetz then wrestled Deputy Davin to the ground because he wanted to physically stop her from continuing her questioning. He also swung a knife at Deputy Davin because he wanted to hurt her enough temporarily to stop her from pursuing him. And when Deputy Davin pulled out a gun, Kravetz did not want her to shoot him, so he took it from her; he then fired two shots so that he could stun her and escape. This evidence showed that Kravetz had the ability to form intent. Given the evidence presented at trial, Kravetz fails to show how the outcome of the trial would have been different even if defense counsel had successfully moved to suppress the sketch and the Libby photograph.

2.      Same Criminal Conduct

Kravetz argues that defense counsel provided ineffective assistance because he failed to ask the sentencing court to find that unlawfully disarming a law enforcement officer and first degree assault constituted the same criminal conduct. We disagree.

Under RCW 9.94A.589(1)(a),[2] "whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score. . . . [I]f the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." Crimes constitute the same criminal conduct when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). Courts narrowly construe RCW 9.94A.589(1)(a) to disallow most assertions of same criminal conduct. *State v. Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013).

When a defendant commits two crimes involving the same victim at the same place within a limited period of time, the determinative question is whether each crime required the same criminal intent. *State v. Saunders*, 120 Wn. App. 800, 824, 86 P.3d 232 (2004). To determine whether two crimes require the same criminal intent, we look objectively at whether one crime furthered the other, or whether there was a substantial change in the nature of the criminal objective. *Id.* Crimes may involve the same criminal intent if they were a part of a continuing, uninterrupted sequence of conduct. *State v. Munoz-Rivera*, 190 Wn. App. 870, 889, 361 P.3d 182 (2015). "But when an offender has time to 'pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act,' and makes the decision to proceed, he or she has formed a new intent to commit the second act." *Id.* (quoting *State v. Grantham*, 84 Wn. App. 854, 859, 932 P.2d 657 (1997)).

---

[2] The legislature amended RCW 9.9A.589 in 2015. LAWS OF 2015, 2d Spec. Sess, ch. 14, § 13. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

Here, the parties do not dispute that the crimes were committed at the same time and place, and against the same victim. The only issue in dispute, and for which argument is provided, is whether the crimes of disarming a law enforcement officer and first degree assault involved the same criminal intent.[3]

Kravetz argues that the two crimes constituted the same criminal conduct because he had a singular intent of assaulting Deputy Davin, the two crimes were intimately related, and the disarming crime furthered the assault crime. In doing so, Kravetz cites to *State v. Anderson*, 72 Wn. App. 453, 864 P.2d 1001 (1994), and *State v. Miller*, 92 Wn. App. 693, 964 P.2d 196 (1998).

In *Anderson*, while being transported from jail to the hospital, the defendant slammed into the officer and tried to take the officer's gun. 72 Wn. App. at 456. After a struggle, the officer regained control of his gun, but the defendant escaped. *Id.* at 457. The defendant was later recaptured and convicted of first degree assault and first degree escape. *Id.* On appeal, the court held that the two offenses constituted the same criminal conduct because "[o]bjectively viewed, [the defendant's] criminal intent was the same from one offense to the other: a desire to escape [the officer's] custody." *Id.* at 464.

Here, in contrast to *Anderson*, Kravetz did not reach for Deputy Davin's weapon until she drew it. While Kravetz also had the goal of escaping the courthouse, his intent at the time he committed the disarming crime was to avoid getting shot. It was not until he gained control of the

---

[3] Under RCW 9A.76.025, a "person who commits another crime during the commission of the crime of disarming a law enforcement or corrections officer may be punished for the other crime as well as for disarming a law enforcement officer and may be prosecuted separately for each crime."

weapon that he formed the intent to assault Deputy Davin with the firearm to stun her enough to allow him to escape.

In *Miller*, the defendant was convicted of attempted theft of a firearm and third degree assault based on a struggle with an officer. 92 Wn. App. at 697-99. During the struggle, the officer attempted to handcuff the defendant and the defendant struggled for the officer's gun. *Id*. at 697. The officer struggled to keep the gun holstered. *Id*. The defendant had a hand on the officer's gun during the entire struggle and "pretty much the whole time was trying to get the gun." *Id*. at 708. The court held that the two offenses constituted the same criminal conduct because "the evidence shows that Miller intended throughout to deprive the officer of his weapon." *Id*.

Here, unlike the attempted theft and assault in *Miller*, Kravetz's act of disarming a law enforcement officer and then assaulting the officer was not based on the same act. Kravetz first took the gun from Deputy Davin because he was afraid he was going to be shot. Kravetz then took a step back and fired at Deputy Davin. Kravetz even had time to think about where he was going to shoot Deputy Davin. While Kravetz argues that throughout the two crimes he had the same intent to escape, the record shows otherwise. Kravetz first intended to avoid getting shot and then intended to shoot Deputy Davin. Thus, Kravetz had different criminal intents for each crime.

The State relies on *State v. Wilson*, 136 Wn. App. 596, 150 P.3d 144 (2007). In *Wilson*, the defendant went to his girlfriend's house, forced open the door, splintering some wood, grabbed his girlfriend by her hair, and pulled her out of bed. 136 Wn. App. at 601. The defendant then left to speak with a friend and came back with a piece of wood and threatened to kill his girlfriend. *Id*. The defendant was convicted of assault and harassment, and the sentencing court found the two offenses constituted the same criminal conduct. *Id*. at 603. On appeal, the court reversed the same criminal conduct finding because the defendant had different criminal intents for each crime,

reasoning that the two acts for each crime "were separated in time, providing opportunity for completion of the assault and ending [the defendant's] assaultive intent, followed by a period of reflection and formation of a new, objective intent upon reentering the house to threaten [his girlfriend] and to harass her." *Id*. at 615.

Here, like in *Wilson*, Kravetz had the opportunity to complete his disarming offense, ending his defensive intent, and then formed a new intent to assault Deputy Davin. While the disarming crime allowed Kravetz to assault Deputy Davin, the evidence also showed that Kravetz had time to pause and reflect, and decide to cease his criminal activity or proceed to commit the second act. *Munoz-Rivera*, 190 Wn. App. at 889. Kravetz told the police that he took the gun, took a step back and stood away because he thought Deputy Davin had a stun gun, and then fired. And Dr. Ronnei testified that Kravetz told her he shot Deputy Davin in an area that he thought would likely hit a bullet proof vest. This showed that Kravetz had time to reflect on his decision to shoot. Kravetz's crimes of disarming a law enforcement officer and first degree assault did not constitute the same criminal conduct. Therefore, we hold that defense counsel's performance was not deficient and he did not provide ineffective assistance when he failed to ask the sentencing court to find that the disarming a law enforcement officer and first degree assault convictions constituted the same criminal conduct.

3.      Consideration for Exceptional Sentence

Kravetz next argues that defense counsel provided ineffective assistance because he failed to raise the issue of double counting in regards to the determination of his exceptional sentence for first degree assault. Specifically, Kravetz argues that because his disarming a law enforcement officer conviction was taken into consideration when calculating his offender score for his first degree assault conviction, every fact underlying the disarming conviction, including the fact that

14

he knew Deputy Davin was a law enforcement officer when he committed the offense, was already considered and cannot be the basis for his exceptional sentence.  We disagree.

a.        Double counting for exceptional sentence

Under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, "[t]he court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence."  RCW 9.94A.535.[4]  An aggravating circumstance can support a sentence above the standard range if "[t]he offense was committed against a law enforcement officer who was performing his or her official duties at the time of the offense, the offender knew that the victim was a law enforcement officer, and the victim's status as a law enforcement officer [was] not an element of the offense."  RCW 9.94A.535(3)(v).  "The facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt."  RCW 9.94A.537(3).

The Washington Supreme Court has held that "[a] reason offered to justify an exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense."  *State v. Gore*, 143 Wn.2d 288, 315-16, 21 P.3d 262 (2001), *overruled on other grounds by State v. Hughes*, 154 Wn.2d 118, 110 P.3d 192 (2005), *abrogated by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006).  Thus, a sentencing court "may not list the offender's criminal history as a reason to justify an exceptional sentence since criminal history is one of the two components (the other being the seriousness of the offense) used to compute the presumptive [sentencing] range."  *State v. Nordby*,

---

[4] The legislature amended RCW 9.9A.535 in 2011, 2013 and 2016.  LAWS OF 2011, ch. 87 § 1; LAWS OF 2013, ch. 84, § 26; LAWS OF 2013, ch. 256, § 2, LAWS OF 2013, 2d Spec. Sess. ch. 35, § 37 and LAWS OF 2016, ch. 6, § 2.  The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

106 Wn.2d 514, 518 n.4, 723 P.2d 1117 (1986). In analyzing whether a factor has already been considered in determining the standard range, the focus is on the elements of the crime being sentenced and not the elements of other current offenses. *See State v. Pappas*, 176 Wn.2d 188, 196, 289 P.3d 634 (2012) (noting that the aggravating factor at issue was not necessary to commit the offense being sentenced).

Here, the jury found Kravetz guilty of unlawfully disarming a law enforcement officer.[5] And by special verdict the jury found that the crime of first degree assault was committed against a law enforcement officer who was performing her official duties and that Kravetz knew the victim was a law enforcement officer. Kravetz argues that the aggravating factors the sentencing court used were elements of the disarming a law enforcement officer offense and already considered in convicting him for such offense.

However, the sentencing court did not use the disarming a law enforcement officer *conviction* to impose an exceptional sentence. Rather, the sentencing court used the jury's special verdict findings relating to Kravetz's first degree assault conviction to impose the exceptional sentence.

Also, the sentencing court did not consider the elements of the disarming a law enforcement officer offense in computing the standard range for Kravetz's first degree assault conviction. The sentencing court merely considered the disarming a law enforcement officer conviction as a current

---

[5] A person is guilty of disarming a law enforcement officer if (1) with intent to interfere with the performance of the officer's duties, (2) the person knowingly removes a firearm or weapon from the person of a law enforcement officer or corrections officer or deprives a law enforcement officer or corrections officer of the use of a firearm or weapon, (3) when the officer is acting within the scope of the officer's duties, (4) the officer does not consent to the removal, and (5) the person has reasonable cause to know or knows that the individual is a law enforcement or corrections officer. RCW 9A.76.023.

felony offense that added a point to Kravetz's offender score. *See* RCW 9.94A.525(7), .589(1)(a). The elements of the current conviction for disarming a law enforcement officer did not matter; the disarming a law enforcement officer conviction was merely another current conviction in calculating the presumptive sentence for the first degree assault conviction.

Kravetz relies on *Nordby* and *State v. Fisher*, 108 Wn.2d 419, 739 P.2d 683 (1987), for support. However, these cases are distinguishable. Both cases involved the imposition of an exceptional sentence based on facts that were necessary to establish the elements of the single conviction at issue. Because the facts were already considered in determining guilt, they were necessarily considered in determining the standard range for the offense. *See Nordby*, 106 Wn.2d at 519; *see also Fisher*, 108 Wn.2d at 425-26.

Here, Kravetz had multiple convictions. The fact that the first degree assault was committed against a law enforcement officer performing her official duties and the fact that Kravetz knew the victim was a law enforcement officer were not considered in determining the standard range for his first degree assault conviction. The sentencing court did not consider the elements of the disarming a law enforcement officer conviction; rather, the sentencing court only considered that crime as a current felony conviction. Therefore, we hold that defense counsel's performance was not deficient and he did not provide ineffective assistance when he failed to raise this issue regarding the exceptional sentence imposed on Kravetz's first degree assault conviction.

C.      CONSIDERATION OF MITIGATING FACTOR

Kravetz argues that the sentencing court erred when it refused to find the mitigating factor of mental illness. We disagree.

Generally, the sentencing court must impose a sentence within the standard sentencing range under the SRA. *State v. Graham*, 181 Wn.2d 878, 882, 337 P.3d 319 (2014). However, the

sentencing court may exercise its discretion by imposing a sentence below the standard range if "substantial and compelling reasons" justify an exceptional sentence. RCW 9.94A.535. The sentencing court must find that mitigating circumstances justifying a sentence below the standard range are established by a preponderance of the evidence. RCW 9.94A.535(1). One of these mitigating circumstances is that the "defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired." RCW 9.94A.535(1)(e).

No defendant is entitled to an exceptional sentence below the standard range, but "every defendant *is* entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005). Where a defendant has requested an exceptional sentence below the standard range, review is limited to circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

Here, the sentencing court considered Kravetz's mental health condition in sentencing him. The sentencing court acknowledged defense counsel's argument that Kravetz had "all kinds of mental issues." VRP (May 17, 2013) at 40. The sentencing court even said that it thought Kravetz was delusional and obsessive. But the sentencing court rejected defense counsel's argument. The sentencing court said that Kravetz "very well knew what [he] was doing." VRP (May 17, 2013) at 39.

The sentencing court has discretion to impose a sentence below the standard range and here it considered Kravetz's argument. The sentencing court decided the mitigating factor did not support a sentence below the standard range, and its decision is supported by the evidence.

Kravetz's own statements showed that he knew his actions were not legally justified and were morally wrong. And the testimony of the doctors showed that Kravetz knew right from wrong, could make purposeful decisions, and appreciated the quality of his acts. Therefore, we hold that the sentencing court did not abuse its discretion.

D. FUTURE DANGEROUSNESS AND EXCEPTIONAL SENTENCE

Kravetz argues that the sentencing court erred when it used future dangerousness as a reason for imposing an exceptional sentence upward. This claim is factually meritless.

A "trial court is always entitled to change views expressed in an oral opinion upon presentation of the findings of fact." *State v. Smith*, 68 Wn. App. 201, 206, 842 P.2d 494 (1992). "'A trial court's oral or memorandum opinion is no more than an expression of its informal opinion at the time it is rendered. It has no final or binding effect unless formally incorporated into the findings, conclusions, and judgment.'" *State v. Friedlund*, 182 Wn.2d 388, 394-95, 341 P.3d 280 (2015) (quoting *State v. Mallory*, 69 Wn.2d 532, 533-34, 419 P.2d 324 (1966)). "A written judgment and sentence, by contrast, is a final order subject to appeal." *Id.* at 395.

Here, the sentencing court orally stated during Kravetz's sentencing hearing that it believed that Kravetz was very dangerous, if given the opportunity he would do something like this again, the court needed to put him in a position where he was not capable of hurting anybody for a long time, and when he was released he would be so feeble that he could not do something like this again. However, the sentencing court did not enter written findings to such effect.

In its written findings of fact and conclusions of law, the sentencing court relied on only its findings that (1) the jury found as an aggravating circumstance that the first degree assault charged in count 2 was committed against a law enforcement officer who was performing her official duties at the time of the offense, the offender knew that the victim was a law enforcement

19

officer, and the victim's status as a law enforcement officer was not an element of the crime of first degree assault; (2) the jury found that Kravetz was armed and/or used a firearm during the commission of the crime; and (3) the jury's special verdict findings were supported by evidence beyond a reasonable doubt. The sentencing court concluded that the jury's unanimous finding on the aggravating factor provided a substantial and compelling reason justifying an exceptional sentence above the standard range. The sentencing court also concluded that the standard range sentence with the firearm enhancement was clearly too lenient and not proportionate to the seriousness of the offense. The sentencing court's written findings and conclusions do not rely on future dangerousness as a reason for imposing an exceptional sentence upward.

Kravetz's argument about the trial court's reliance on Kravetz's future dangerousness is without merit. Therefore, we hold that this claim fails.

We deny Kravetz's petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Johanson, P.J.

_____
Melnick, J.

20